·   [No. 5845.  Decided November 14, 1905.]

CALVIN C. DEATON, *Respondent* v. O. V. LAWSON *et al.*,
*Appellants.*[1]

PHYSICIANS AND SURGEONS—OWNER OF MEDICAL INSTITUTE HAVING NO LICENSE—CONTRACT TO PERFORM PROFESSIONAL SERVICES—VALIDITY—CONSIDERATION.  A contract made by the owner of a "medical institute" to render professional services, cure diseases, and give medical treatment, is void as against public policy and in violation of law, where such owner has no license to practice medicine, and the physician in charge had nothing to do with making the contract, and had no connection with the institute except as an employee on a salary.

1Reported in 82 Pac. 879.

ASSIGNMENTS—CONTRACTS ASSIGNABLE.    A contract for medical treatment is personal and non-assignable.

CONTRACTS—INVALIDITY—RECOVERY OF MONEY PAID.    Money paid on an executory contract for medical treatment, to a person having no license to practice, and void as against public policy, may be recovered.

Appeal from a judgment of the superior court for King county, Tallman, J., entered May 2, 1905, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to recover money fraudulently obtained.    Affirmed.

*Graves, Palmer, Brown & Murphy,* for appellants.

*Sweeney & Steiner* for respondent.

RUDKIN, J.,—On the 18th day of March, 1903, the plaintiff and the defendant O. V. Lawson entered into the following written contract:

"This contract and agreement, entered into this 18th day of March, 1903, by and between the officers of the State Medical Institute, and the physician in charge, located at Seattle, State of Washington, the party of the first part, and C. C. Deaton, of Seattle, Washington, the party of the second part;

"Witnesseth:    That the party of the first part agrees and contracts to render professional services to the party of the second part until the party of the second part shall be cured of a certain disease, concerning which the party of the second part has this day consulted the party of the first part.

"The party of the second part, for and in consideration of the above agreement, does hereby agree and contract to pay the party of the first part, the sum of ————— dollars ($469) as follows, viz., by cash, $469.

"It is also agreed that the party of the second part follow directions carefully, and to take the medicines and remedies as prescribed from time to time by the party of the first part, until a complete cure is effected.

"In Witness Whereof,    The respective parties have hereunto set their hands and seals this 18th day of March, 1903.

                        "C. C. DEATON.
                        "S. M. INST."

The circumstances leading up to the execution of this contract, as detailed by the plaintiff, are these: The plaintiff, at the time, was suffering from indigestion and other ills, and called at the office of the State Medical Institute for treatment. He there consulted with the defendant Lawson and with Dr. Richards, a physician in the employ of the defendant, and they guaranteed to cure him within three months for the sum of $85. When the plaintiff came to pay the defendant Lawson he exhibited a considerable sum of money in addition to the $85. On sight of such additional sum, the defendant Lawson forthwith represented to the plaintiff that he could give a different treatment which would effect a permanent cure within six weeks, but that it would cost more. The above contract is the result. The plaintiff received some medicine on the day of the execution of the contract, and returned on the following day for further treatment as directed. On the evening of the second day he told his father what he had done, and his father refused to permit him to take further treatment from the defendants. After this the plaintiff never returned to the defendants' office, and refused to take further medicine or receive further treatment from them. This action was brought to recover the money paid under the contract.

The pleadings admit that the State Medical Institute is owned, operated, managed, and controlled by the defendant Lawson. The execution of the contract and the payment of the $469 are also admitted. The court found, that the defendant Lawson was not entitled to practice medicine under the laws of the state of Washington, not having a license to so practice, as provided by the statutes of said state; that the State Medical Institute has in its employ one Dr. Richards, a regularly licensed physician; that the said Lawson fixed the fees and charges against the plaintiff, collected the same, and signed the written contract upon the part of the State Medical Institute; and that Dr. Richards had nothing

whatever to do with fixing the fees or charges, or in making the contract with the plaintiff. The court further found,

"That the sum of $85 was a reasonable charge for the services agreed to be rendered to the plaintiff, but that the additional charge of $384 was excessive, and that plaintiff's mental and physical condition was such that he was not capable of entering into any kind of a contract, and that said purported written contract for this reason is void."

On these findings, the court rendered a judgment in favor of the plaintiff for the sum of $384. The defendants appeal.

The appellants earnestly insist that the finding that the respondent was not capable of entering into any kind of a contract, and that the fees charged were excessive, is without the issues raised by the pleadings, and is not supported by the testimony. If the judgment of the court finds no support in the record aside from this finding, it would be difficult to sustain it. We think, however, that the judgment is amply supported on other grounds. The findings of the court and the entire testimony clearly show that this was the personal contract of O. V. Lawson. The reference in the body of the contract to the State Medical Institute, its officers, and the physician in charge, and the claim of the appellant Lawson that he signed the contract as secretary for Dr. Richards, are but so many pretenses to evade the laws of the state.

It is admitted in the pleadings that the State Medical Institute is owned, operated, managed, and controlled by Lawson. In other words, he is doing business under that name. It is further shown that Dr. Richards was not a party to the contract, and was in no manner obligated to perform it. The court finds, and he himself testifies, that he has no connection, directly or indirectly, with the State Medical Institute, has nothing to do with the making of contracts, or the fixing of fees, but is simply employed on a salary. If we should sustain the claim of the appellant Lawson that he signed the contract as secretary for Dr. Richards, we have no contract at all, as the record clearly shows that he had no authority in

that behalf. Stripped of all subterfuges and pretenses, this is neither more nor less than a contract on the part of appellant Lawson to render professional services for the respondent, a contract he could not perform without violating the laws of the state. The contract was therefore against public policy, and is utterly void.

A contract to render professional services is personal and non-assignable. No person can perform or tender performance except the person therein named, without the consent of the other party to the contract. Inasmuch as the appellant Lawson could not perform his part of the agreement without violating the laws of the state, there was no consideration for the alleged contract or the payment of the money thereunder, and the respondent is entitled to recover the money so paid, so long as the contract remains executory. The fact that he was not awarded as much as he was entitled to under the law is no ground for reversal.

There is no error in the record and the judgment is affirmed.

MOUNT, C. J., DUNBAR, CROW, FULLERTON, HADLEY, and ROOT, JJ., concur.