REDMAN *v.* MENA GENERAL HOSPITAL, INC.

4-6417                                                                152 S. W. 2d 542

Opinion delivered June 23, 1941.

*J. F. Quillin* and *Wm. P. Alexander,* for appellant.
*Howard Hasting,* for appellee.

HOLT, J.   July 17, 1940, appellee, Mena General Hospital, a corporation, sued appellants, Dr. Pierre Redman and Dr. H. G. Heller, for damages alleged to have resulted from their breach of a certain lease contract and for recovery of certain equipment, supplies and personal property, or its value, together with damages for the wrongful detention thereof.

Appellants filed demurrers to appellee's complaint, which were overruled. Thereupon appellants answered denying the material allegations of the complaint, alleged that appellee had breached the contract in question and appellant, Dr. Pierre Redman, filed cross-complaint alleging that appellee was wrongfully withholding from him certain personal property which belonged to him, alleged damages for its wrongful detention and prayed that appellee take nothing on its complaint and that appellant, Dr. Redman, have judgment for the return of said personal property set out in his cross-complaint, together with damages.

By agreement, the cause was submitted to the court sitting as a jury. At the conclusion of all the testimony, the able trial judge made certain findings of fact and conclusions of law, from which we adopt the following findings of fact as being supported by the record in this cause:

"On October 1, 1938, plaintiff, Mena General Hospital, a corporation, was operating a hospital in the city of Mena, Arkansas. Defendants were members of the hospital staff. On that day the parties executed their written lease contract whereby plaintiff leased the property of the hospital and surgical supplies and equipment to defendants for a period of ten (10) years. In this contract defendants agreed to begin construction of a new hospital building within one year from the date of the execution of the lease and further agreed to maintain and operate a General Hospital in the city of Mena during the term of said lease contract.

"It was further provided that defendant lessees should have the right to exchange, or apply as part payment, any part of the leased property for new or modern equipment whenever in their judgment such action would be to their best interest. It was further agreed that if defendants should exercise this right to exchange or trade in property leased for new equipment, then the new property thus acquired should be 'considered as substituted for the property so exchanged or turned in

and be the property of lessor under the terms of this lease to the same extent and for the same purposes as that above leased.'

"It was further provided that in the event of a breach of the covenants and agreements set out on the part of the lessees the lessors should have the right to retake possession of the property involved in the lease contract, and all sums paid by lessees to all persons under the terms thereof should become rent and considered as earned and not subject to refund. There are other provisions of the lease contract which do not seem material to the adjudication of the issues involved in this suit.

"Defendants operated the hospital under this agreement for a year and advised plaintiff of their inability to begin construction of a new hospital building as required under the contract and plaintiff accepted this explanation and as explained by the president of plaintiff, 'we let it ride.'

"Sometime during the early spring of 1940, differences arose between the two defendant doctors, the nature of which seem vague but none the less serious, from the testimony. The situation became so critical that defendant, Dr. Heller, in effect advised plaintiff on May 31, 1940, of his withdrawal from further management and operation of the hospital, and notified plaintiff that he would not be further responsible for the accounts and obligations of the hospital. In this connection Dr. Heller in response to a question as to whether he and Dr. Redman dissolved their partnership of the hospital at the time said: 'Well, I dissolved it, I just offered the board a proposition to get out and I didn't go up or have nothing more to do with it.'

"It is also apparent that the defendant, Dr. Redman, advised the president of plaintiff corporation of the inability of defendants to continue the operation together. While there is testimony to the effect that Dr. Heller later sent patients to the hospital and still was considered a member of the staff, there is nothing to indicate

that he ever withdrew from his position as expressed in his letter of May 31, 1940, in so far as the active management, operation and maintenance of the hospital was concerned.

"After considerable negotiation between the parties, plaintiff notified defendants by letter of June 21, 1940, of their termination of the contract because of defendants alleged breach thereof, and demanded return of the property under the lease contract. The next day plaintiff sent a truck to the hospital and property pointed out by Dr. Redman as belonging to the board was removed. Other property, the possession of which is involved in this action was left at the hospital. Included in the property left was a new X-ray which had been purchased by the defendants. According to the testimony of the president and vice-president of plaintiff, defendants had informed them that the old X-ray which had been turned over to defendants at the time of the execution of their contract had been traded in by them on the new X-ray. Defendants did not deny this testimony and the old X-ray was not in the hospital at the time the other property was recovered."

The court then announced that there were two principal issues in the case (1) whether there was a breach of the contract in question by appellants, and, if so, (2) whether they were entitled to the new X-ray machine, a fracture table and a blood pressure instrument. He determined these issues in favor of appellee and adjudged that it have and recover from appellants "one fracture table, or its value $25, together with one blood pressure instrument, or its value $10, together with one new X-ray machine, . . . or its value $1,340." No recovery was allowed appellant, Dr. Redman, on his cross-complaint. Appellants have appealed.

Appellants first urge that the trial court erred in overruling their demurrers to the complaint. In passing on the demurrers it appears that the court ordered certain paragraphs stricken from the complaint and overruled the demurrers as to the remainder. We think it

unnecessary to detail here the allegations in the complaint which included, as a part thereof, the lease contract here in question. It suffices to say, however, that after reviewing the complaint, we have reached the conclusion that a cause of action is stated and no error was committed in overruling appellants' demurrers after striking certain paragraphs from the complaint.

The principal contention by appellee, in the court below, as well as here on appeal, was that the lease contract in question, under which appellants leased the hospital and equipment from appellee, and under which they agreed "to maintain and operate a general hospital in the city of Mena, Arkansas," was a joint contract on the part of appellants which contemplated and required the personal services of each, and that a breach of the contract on the part of either of the appellants was a breach by both. In other words, one could not perform without the other. It is our view that appellee is correct in this contention.

The contract here in question contemplated the personal services of each of these skilled and experienced physicians and as such their personality becomes very material under a contract for the management and operation of a general hospital such as we have here. It is undisputed here that appellant, Dr. Heller, terminated and breached the contract so far as he was concerned by letter to appellee.

In 17 C. J. S. 330, § 10, the author defines a personal contract as follows: "A personal contract is a contract for personal services; a contract in which the personality of one of the parties is material."

And in Page on the Law of Contracts, vol. 4, p. 3985, § 2251, we find this language: "A contract to render professional services is personal and nonassignable. An attorney cannot assign an executory contract whereby he agrees to render professional services, nor can an abstractor assign a contract employing him to do certain abstracting. A contract for the employment of a teacher cannot be assigned, . . ." And in support

of the text is cited a decision from the Washington Supreme Court, *Deaton* v. *Lawson,* 40 Wash. 486, 82 Pac. 879, 2 L. R. A., N. S., 392, 111 Am. St. Rep. 922. In that case there was involved the contract of a physician and it was there said: "A contract to render professional services is personal and nonassignable. No person can perform, or tender performance, except the person therein named, without the consent of the other party to the contract. . . ."

We cannot agree with appellants that the principles announced in the case of *W. D. Reeves Lumber Co.* v. *Davis,* 124 Ark. 143, 187 S. W. 171, control here. In that case the facts are different. The contract in that case was in no sense personal nor was the personality of one of the parties material.

It is also our view that the trial court committed no error in awarding the X-ray machine, the fracture table and the blood pressure instrument in question, or their cash value, to appellee.

There is evidence that appellee on February 29, 1936, purchased a complete X-ray machine and equipment for $1,286.60. Dr. Hawkins testified that the fracture table was worth approximately $80 and the blood pressure instrument $10. Appellant, Dr. Redman, placed the value of the fracture table at $62.55.

There is substantial evidence that the X-ray machine and its equipment were applied on the purchase price of the new X-ray machine here in question by appellants after taking over the hospital under the lease agreement, and under the plain terms of the lease contract this new X-ray machine should be "considered as substituted for the property so exchanged or turned in and be the property of the lessor under the terms of this lease to the same extent and for the same purposes as that above leased." It is our view that this new X-ray machine became the property of appellee upon the breach of the lease contract by either of appellants. Had the parties to the lease contract intended that appellee should be entitled to recover only the value of the old

X-ray in such situation they could have very easily so stipulated.

Having reached the conclusion on the whole case that there is substantial evidence to support the judgment of the trial court, we accordingly affirm.