[No. 32485. Department One. January 12, 1954.]

THE STATE OF WASHINGTON, *Appellant*, v. A. E. BOREN *et al.,*
*Respondents,* L. L. FOOTE *et al., Appellants.*[1]

*Charles O. Carroll, John L. Vogel,* and *Riddell, Riddell &*
*Williams,* for appellants.

WEAVER, J.—The first chapter. In *State v. Boren,* 36 Wn.
(2d) 522, 219 P. (2d) 566 (1950), this court held, under the
provisions of Rem. Rev. Stat. (Sup.), § 10031-6 [*cf.* RCW
18.32.020], that it is a reasonable exercise of the state's
police power to include in the definition of practicing den-
tistry, a person who owns, maintains, or operates an office
for the practice of dentistry; and that unlicensed persons,
whose activities come within such definition, should be en-
joined from such practice. Consequently, on February 15,

[1]Reported in 265 P. (2d) 254.

1951, the trial court permanently enjoined A. E. Boren and W. W. Shepherd from practicing dentistry without a license within the state of Washington; permanently enjoined A. E. Boren, W. W. Shepherd, and C. D. Harlow (who was licensed to practice dentistry) to cease the illegal practice of dentistry at the Harlow Clinic at 1909-1913 Westlake avenue, Seattle, Washington; and permanently enjoined C. D. Harlow from aiding and abetting A. E. Boren, W. W. Shepherd, and any other unlicensed person, from practicing dentistry at any place or places in the state of Washington. The United States supreme court dismissed an appeal from this decree for want of a substantial Federal question. *Boren v. State,* 340 U. S. 881, 95 L. Ed. 640, 71 S. Ct. 198.

The second chapter. October 18, 1951, A. E. Boren was charged with criminal contempt of court *by information* alleging that he had willfully disobeyed the injunction entered February 15, 1951. This court set aside the judgment of conviction and remanded the case, with instructions to grant the defendant a jury trial. *State v. Boren,* 42 Wn. (2d) 155, 253 P. (2d) 939 (1953).

This is the third chapter. November 7, 1951, a motion was filed for an order in civil contempt directed to Boren, Shepherd, and Harlow. The motion was supported by the affidavit of a state dental inspector of the department of licenses.

Since the appellants (the state of Washington and L. L. Foote and Lando W. Zech, interveners) consented to the dismissal of Dr. C. D. Harlow from the proceedings, the alleged violations of the injunction of February 15, 1951, fall into three groups:

I (a) *Boren and Shepherd*—that A. E. Boren and W. W. Shepherd continued "to be interested in the dental office run under the name of Dr. Charles D. Harlow at 1909 Westlake Avenue in Seattle, Washington, without any change since the entry of" the decree; and (b) that, jointly, they have "continued to own, maintain and operate an office for the practice of dentistry at 1410 Second Avenue in Seattle, Washington, under the name of Dr. Harry V. Flynn;"

II *A. E. Boren*—that A. E. Boren, since the entry of the decree, has "owned, maintained and operated an office for the practice of dentistry in the name of Dr. Earl R. Cutler at 2035 Westlake Avenue in Seattle, Washington;" and,

III *W. W. Shepherd*—that W. W. Shepherd, since the entry of the decree, has continued to own, maintain, and operate offices for the practice of dentistry in the state of Washington as follows: (a) at 516 Burwell street, Bremerton, under the name of Dr. C. A. Laws, and later, under the name of Dr. John McCarthy; (b) at 1504 First avenue, Seattle, under the name of Dr. Henry Brown; and later, under the name of Dr. Guy N. Ford; and (c) at 1032 East 65th street, Seattle, under the name of Dr. Raymond J. Edlin.

Controverting affidavits were filed. The cause was tried to the court upon the issue of whether the defendants had violated the injunction of February 15, 1951, in the specific respects alleged.

As applied to the six dental offices listed in the affidavit, the trial court found (or refused to find) as follows:

I (a) April 15, 1951, Shepherd and Boren delivered a bill of sale to Dr. C. D. Harlow for the dental office at 1909 Westlake avenue, and each accepted from him a promissory note for $14,079.92, secured by a chattel mortgage upon all of the dental equipment therein. Boren received certain money at various times, alleged to be a share of the profits of the Harlow Dental Clinic, but the trial court specifically found, that

". . . there is no showing that such sums were accumulated by the Harlow Dental Clinic since the entry of the decree on February 15, 1951"
and that

". . . there is no showing whether they were or were not for obligations arising since February 15, 1951."

I (b) April 15, 1951, W. W. Shepherd accepted a promissory note for $25,000 from Dr. Harry V. Flynn, secured by a chattel mortgage upon all of the dental equipment located at 1410 Second avenue, and assigned the lease of the premises to him. Dr. Flynn has never made any payments upon

the promissory note. He was operating the dental office at the time of trial.

II and III (b) No error is assigned to the trial court's failure to make a finding as to the operation of the dental offices at 2035 Westlake avenue, and at 1504 First avenue, in Seattle.

III (a) Mrs. Constance F. Conway was the legal owner of the dental office at 516 Burwell street in Bremerton. Shepherd "had some connection therewith but Mrs. Conway never transferred any property rights therein to said defendant."

III (c) As to the remaining dental office, the court found:

"All of the testimony in regard to the operation of the dental clinic at 1032 E. 65th Street, in Seattle, is unbelievable and the court declines to make any findings thereon; that except for the testimony of Miss Krug and as hereinbefore specifically found *the court had no credible evidence in support of the charges.*" (Italics ours.)

After entry of the findings of fact, the trial court discharged the defendants from the orders to show cause. It is from this discharge that appeal is taken.

There is a contrariety of opinion as to whether contempt proceedings, arising out of violations of court orders in civil cases, are of civil or criminal character. This has led to a difference of opinion as to the degree of proof necessary to adjudge one in contempt. (See annotation: Degree of proof necessary in contempt proceedings, 49 A. L. R. 975.) In *State v. Boren,* 42 Wn. (2d) 155, 253 P. (2d) 939 (1953), we discussed in detail the distinction between contempt pro-. ceedings, initiated by information under the criminal code (Rem. Rev. Stat., § 2372 [*cf.* RCW 9.23.010]), and proceedings initiated by affidavit and show cause order under the general contempt statutes (Rem. Rev. Stat., § 1049, RCW 7.20.010). In *Arnold v. Nat. Union Marine Cooks etc.,* 41 Wn. (2d) 22, 27, 246 P. (2d) 1107 (1952), this court said:

"A civil contempt arises from disobedience of a court order entered for the benefit or advantage of a party to a civil action, and the object of the proceedings is not to punish the offender but to coerce him into obeying the mandate of the court."

■ It is plain that the present contempt proceeding was instituted for the purpose of coercing respondents (who have filed no brief in this court) to comply with the decree of February 15, 1951, prohibiting them from practicing dentistry and is, therefore, a civil contempt proceeding. As such, the burden is upon appellants to prove that respondents have continued to "own, operate and maintain" offices for the practice of dentistry since the entry of the decree. This must be established by a preponderance of the evidence as in other civil proceedings. Dangel, Contempt, § 191.

■ It would serve no purpose to set forth the conflicting and contradictory testimony which the trial court was called upon to consider. After an examination of the record, we entertain the same doubts and reach the same conclusion expressed by the trial judge when he said:

"Like the State and the intervenor, I suspect that claim [violation of the injunction] is true. But when it comes to establishing it by evidence of a credible character, they haven't produced any. I think, gentlemen, the State has failed to establish its claim. I discharge the show cause order."

The correctness of this conclusion becomes more apparent when the testimony and exhibits are considered alone, leaving out the extended colloquy of counsel which appears throughout the entire record as a result of the background laid in chapters one and two of this saga.

We cannot say that the evidence preponderates against the findings of the trial court. *Peterson v. Schoonover*, 42 Wn. (2d) 621, 257 P. (2d) 209 (1953). The findings support the conclusion of law and judgment.

■ Appellants' remaining assignments of error are directed to the court's refusal to admit in evidence certain testimony of Dr. W. A. Smith and to the court's refusal to admit certain exhibits. The record clearly shows that Dr. Smith was attempting to testify to matters occurring *after* this action had been commenced. Much of his testimony is incompetent. There was no offer of proof which made clear to the trial court the competency of that to which

Dr. Smith might have testified. *Tomlinson v. Bean,* 26 Wn. (2d) 354, 361, 173 P. (2d) 972 (1946).

We need not discuss the five exhibits excluded from evidence. The record discloses that the exhibits were either (a) not sufficiently identified; (b) were incompetent or immaterial; (c) were merely cumulative; (d) were of no probative value; or (e) the assignment of error directed to their exclusion was not argued in the brief of appellant.

The judgment is affirmed.

GRADY, C. J., MALLERY, HILL, and OLSON, JJ., concur.