[Nos. 897-2; 898-2. Division Two. June 13, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT JOSEPH MALONE *et al., Appellants*.

James S. Witt, III and *Allotta, Witt, Witt & Vlosich,* for appellants (appointed counsel for appeal).

*Ronald L. Hendry, Prosecuting Attorney,* and *Karl D. Haugh, Deputy,* for respondent.

PETRIE, J. — The defendants, John Edward Marling and Robert Joseph Malone, appeal from an order entered in Pierce County Superior Court declaring each of them to be habitual traffic offenders, and revoking their driving privileges for a period of 5 years.

The agreed facts in these cases reveal that between the dates of September 13, 1966 and October 1, 1971, John Marling incurred more than 20 convictions or bail forfeitures for various moving traffic violations. Two of these violations occurred after the Washington Habitual Traffic Offenders Act became effective. Similarly, Robert Malone, between August 8, 1967 and October 13, 1971, obtained more than 20 convictions or bail forfeitures for moving traffic offenses. Like Marling, two of Malone's convictions came after the above-named act became effective.

By their consolidated appeals, defendants have challenged the constitutionality of the Washington Habitual Traffic Offenders Act (RCW 46.65) on the grounds that it is

violative of the due process and equal protection provisions of our federal and state constitutions.

In their first assignment of error, the defendants contend the act is unconstitutional in that it is too broad, vague and indefinite to be enforced with any certainty. They base this argument on three grounds. First, they claim the act is too vague in that it is unclear as to what type, if any, of a full hearing the defendants are entitled to. Second, they argue that the act is too vague as to what type of convictions or bail forfeitures fall within the ambit of RCW 46.65. Finally, the defendants allege that the means selected to enforce the law are too broad and bear no rational connection with the objectives sought to be attained. We shall consider these questions in the inverse order in which they were raised, taking the second and third arguments together.

Defendants concede that the state has a legitimate interest in providing safe roads upon which its residents may travel. They further agree that it is a valid exercise of the state's police power to restrict the privileges of those who represent a threat to the safe maintenance of public roads. They assert, however, that men of common intelligence have no way of knowing what type of violations are included in RCW 46.65.020(2). They argue that any traffic violation, no matter how insignificant, may be included in this number. Because these standards are so vague, defendants contend that the means selected to achieve the state's interest are too broad to bear a rational connection with the policies of the act. We disagree.

The legislature in enacting RCW 46.65 clearly set forth the objectives to be attained. As stated in RCW 46.65.010, it is the goal of the act:

> (1) To provide maximum safety for all persons who travel or otherwise use the public highways of this state; and
> (2) To deny the privilege of operating motor vehicles on such highways to persons who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the

laws of the state, the orders of her courts and the statutorily required acts of her administrative agencies; and

(3) To discourage repetition of criminal acts by individuals against the peace and dignity of the state and her political subdivisions and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual offenders who have been convicted repeatedly of violations of traffic laws.

To achieve this goal, RCW 46.65.020(2) provides for license revocation for anyone who, within a 5-year period, receives:

Twenty or more convictions or bail forfeitures for separate and distinct offenses, singularly or in combination, in the operation of a motor vehicle which are required to be reported to the department of motor vehicles. Such convictions or bail forfeitures shall include those for offenses enumerated in subsection (1) above when taken with and added to those offenses described herein but shall not include convictions or forfeitures for any nonmoving violation.

At the very least, due process requires that people be given notice of that which is prohibited. *State v. Reader's Digest Ass'n,* 81 Wn.2d 259, 501 P.2d 290 (1972). If a statute fails to give sufficient warning, it is subject to challenge for vagueness or indefiniteness. If men of common intelligence must guess at the meaning and differ as to its application, then fair warning is lacking and due process is violated. *State v. McDonald,* 74 Wn.2d 474, 445 P.2d 345 (1968). The issue then is whether one of common intelligence can, with sufficient certainty, determine those offenses which fall within the purview of RCW 46.65.020(2).

Subsection (2) applies only to convictions or bail forfeitures incurred in the operation of a motor vehicle and which are required to be reported to the Department of Motor Vehicles. These violations may be of any local, state, or federal law, or the laws of a sister state. Convictions or forfeitures for nonmoving violations are specifically excluded. We believe this language is sufficiently clear and definite to constitute fair warning to men of common intelligence.

Defendants contend, however, that even if the statute is sufficiently clear, it is nonetheless too broad to be enforced. They argue that any moving violation, no matter how trivial, may be considered in revoking one's driving privileges; and the result is that the manner of enforcement often may bear no relation to the objectives set out in RCW 46.65.010.

 Under its inherent police power, the state has the right to regulate any activity to safeguard life, health or property. *State v. Boren*, 36 Wn.2d 522, 219 P.2d 566, 20 A.L.R.2d 798 (1950); *Spokane v. Carlson*, 73 Wn.2d 76, 436 P.2d 454 (1968). The only limitation on this power is that the enactment in question must reasonably tend to correct some evil or promote some public interest. *Treffry v. Taylor*, 67 Wn.2d 487, 408 P.2d 269 (1965); *Suburban Fuel Co. v. Lamoreaux*, 4 Wn. App. 179, 480 P.2d 216 (1971). Unless the measure adopted is palpably unreasonable and arbitrary so as to needlessly invade constitutionally protected rights, the legislative judgment will prevail. *Reesman v. State*, 74 Wn.2d 646, 445 P.2d 1004 (1968).

We find no arbitrary or unreasonable infirmities in the legislation in question. The legislature has, in its broad discretion, determined that repeated conviction or bail forfeiture[1] of any violation resulting from the operation of a motor vehicle has a bearing on the competency of a driver. Such violations, though they may vary in severity, do bear a rational connection to the end sought to be attained, *i.e.*, the removal of incompetent drivers from the roads of the state. We would not, even if we disagreed, substitute our judgment for that of the legislative body charged by law with choosing the means of accomplishing this end. *Steilacoom v. Thompson*, 69 Wn.2d 705, 419 P.2d 989 (1966).

---

[1] RCW 46.20.270(3) states: "For the purposes of Title 46 the term 'conviction' shall mean a final conviction in either a state or municipal court. An unvacated forfeiture of bail or collateral deposited to secure a defendant's appearance in court, the payment of a fine, a plea of guilty or a finding of guilt on a traffic law violation charge, shall be equivalent to a conviction, under Title 46 regardless of whether the imposition of sentence is deferred or the penalty is suspended."

Defendants next contend RCW 46.65 violates their due process right to a full hearing prior to revocation of their driving privileges. They argue that the procedure provided by the act is unclear as to what type, if any, of a hearing they are entitled to. We cannot agree.

RCW 46.65.030 imposes upon the director of the Department of Motor Vehicles the duty to forward to the prosecuting attorney the transcript of a person's conviction record when that person's record brings him within the statutory definition of an habitual offender. RCW 46.65.040 requires the prosecuting attorney to then file a complaint against such person in the superior court in the county in which the offender resides. RCW 46.65.050 then requires the court to enter an order directing the person to show cause why he should not be declared an habitual offender. Service of process of all aforementioned papers is also provided. RCW 46.65.060 provides in pertinent part:

> If the court finds that such person is not the same person named in the aforesaid transcript or abstract or that he is not an habitual offender under this chapter, the proceeding shall be dismissed but if the court finds that such person is the same person named in the aforesaid transcript or abstract and that such person is an habitual offender, the court shall so find and by appropriate order direct such person not to operate a motor vehicle on the highways of the state of Washington and to surrender to the court all licenses or permits to operate a motor vehicle on the highways of this state for disposal.

■ ■ Our courts have on numerous occasions recognized that the possession of a motor vehicle operator's license is an interest of sufficient value that due process requires a full hearing at some stage of the deprivation proceeding. *Gnecchi v. State,* 58 Wn.2d 467, 364 P.2d 225 (1961); *Ledgering v. State,* 63 Wn.2d 94, 385 P.2d 522 (1963). Where a person receives notice of the charge against him, has an opportunity to appear and be heard before a competent tribunal, and where judicial findings, conclusions, and a decision upon the merits of the suspension or revocation are entered, then he has received a "full

hearing" as required by due process. *Senior Citizens League, Inc. v. Department of Social Security,* 38 Wn.2d 142, 228 P.2d 478 (1951); *Ledgering v. State, supra.*

The hearing provisions of RCW 46.65 fully comply with the aforementioned requirements. The defendants, with full notice of the charge against them, had the opportunity to appear before a court of record and challenge the evidence presented by their driving records. The due process clause is a protection against arbitrary action by the state. If a person has his day in court, he has not been deprived of due process. *Systems Amusement, Inc. v. State,* 7 Wn. App. 516, 500 P.2d 1253 (1972).

By their second assignment of error, defendants claim the Washington Habitual Traffic Offenders Act is unconstitutional because it fails to provide any standards to govern the restoration of the license.

RCW 46.65.070 states:

> No license to operate motor vehicles in Washington shall be issued to an habitual offender (1) for a period of five years from the date of the order of the court finding such person to be an habitual offender, and (2) until the privilege of such person to operate a motor vehicle in this state has been restored by the department of motor vehicles as hereinafter in this chapter provided.

At the expiration of this period, a person may petition the Department of Motor Vehicles to restore his operator's license. RCW 46.65.100 reads in part:

> Upon receipt of such petition, and for good cause shown, the department of motor vehicles shall restore to such person the privilege to operate a motor vehicle in this state upon such terms and conditions as the department of motor vehicles may prescribe, subject to the provisions of chapter 46.29 RCW and such other provisions of law relating to the issuance or revocation of operators' licenses.

Similarly, RCW 46.65.080 provides:

> At the end of two years, the habitual offender may petition the department of motor vehicles for the return of his operator's license and upon good and sufficient

showing, the department of motor vehicles may, wholly or conditionally, reinstate the privilege of such person to operate a motor vehicle in this state.

The defendants argue that the terms "good and sufficient showing" are the sole governing standard in determining whether to restore one's license. They claim that the return of a license at the expiration of either period of time is thus subject to the whim and caprice of the department, and the act, therefore, violates the equal protection and due process clauses.

Contrary to the defendants' assertion, the restoration of one's driving permit is not governed solely by the arbitrary actions of an administrative agency. The Department of Motor Vehicles is guided by, and must adhere to the provisions of RCW 46.29 and "such other provisions of law relating to the issuance or revocation of operators' licenses." RCW 46.29, whose purpose is to adapt in substance the provisions of the uniform vehicle code relating to financial responsibility, is replete with provisions dealing with administrative suspension or revocation of operator's licenses. Many of these provisions contain flexible standards to guide the administrative agency in its determinations.

That flexible administrative standards are acceptable is no longer open to question. As was stated in *Barry & Barry, Inc. v. Department of Motor Vehicles*, 81 Wn.2d 155, 159, 500 P.2d 540 (1972):

> [T]he delegation of legislative power is justified and constitutional, and the requirements of the standards doctrine are satisfied, when it can be shown (1) that the legislature has provided *standards* or guidelines which define *in general terms* [Italics ours.] what is to be done and the instrumentality or administrative body which is to accomplish it; and (2) that *procedural safeguards exist to control arbitrary administrative action and any administrative abuse of discretionary power.*

The legislature has done so in the instant case. RCW 46.65.100 indicates that terms and conditions governing the restoration of operator's licenses are to be prescribed by the Department of Motor Vehicles. The guidelines, though gen-

eral, are clearly indicated, as is the administrative body which is to carry out the guidelines.

Likewise, adequate procedural safeguards are provided to control any possible abuse of discretion by the agency in the issuance or restoration proceedings. The administrative procedures act provides the means for adequate judicial review. RCW 34.04.130. We are convinced, therefore, that both adequate guidelines and procedural safeguards exist to render RCW 46.65 a valid and constitutional delegation of legislative power.

Defendants next assign error to the use of the transcript or abstract of records of conviction maintained by the Department of Motor Vehicles as prima facie evidence of convictions. They argue that such a document is hearsay and further, that it shifts the burden of proof to the defendant.

The documents here in question are specifically made public by statute. See RCW 46.52.100. Public records, when duly certified, may be admitted in evidence in the courts of this state. See RCW 5.44.040. This exception to the hearsay rule has long been recognized in this state. State v. Bolen, 142 Wash. 653, 254 P. 445 (1927); Steel v. Johnson, 9 Wn.2d 347, 115 P.2d 145 (1941). This is so even though the authenticity of such documents cannot be confirmed by the usual tests of veracity, including cross-examination of the parties on whose authority the truth of the documents depends. Kellerher v. Porter, 29 Wn.2d 650, 189 P.2d 223 (1948). In the instant case, the abstract of the driving record of each defendant was properly certified by a duly appointed custodian of records of the Department of Motor Vehicles. In each case, they were identified as genuine copies of the official record, and were, therefore, admissible.

■ The abstract of defendants' driving records, when properly admitted, becomes prima facie evidence that the person named therein was duly convicted of each offense on the record. RCW 46.65.030. This does not, as the defendants contend, shift the burden of proving their innocence to them. A statutory presumption making a prima facie case merely requires the submission of the issue to the trier of

fact to determine the preponderance of the evidence. The burden of proof rests throughout upon the party asserting the issue. *Gillingham v. Phelps,* 11 Wn.2d 492, 119 P.2d 914 (1941).

Finally, defendants contend that even if the act is constitutional, it applies prospectively only. They argue that since only two violations (as to each of them) occurred after the effective date of the statute, the state cannot revoke their drivers' licenses for conduct which antedated this legislation. We cannot agree.

■ It is well settled that, in the absence of legislative expression to the contrary, a law is presumed to apply prospectively only. *Baker v. Baker,* 80 Wn.2d 736, 498 P.2d 315 (1972). A law is said to be retrospective when it takes away or impairs a vested right acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past. *Hammack v. Monroe St. Lumber Co.,* 54 Wn.2d 224, 339 P.2d 684 (1959). It is arguable that the statute in question does attach a new disability to prior activities in that violations incurred prior to the effective date of the statute are considered in determining a driver's status. But a statute is not retrospective merely because it draws upon antecedent facts for its operation without changing their legal effect. *Bates v. McLeod,* 11 Wn.2d 648, 120 P.2d 472 (1941). The question then is whether this act imposes a severer penalty for prior conduct or merely looks back to that conduct without imposing additional sanctions thereon.

■ Applying the foregoing legal principles to the facts of the cases at bench, we are satisfied that RCW 46.65 does not apply retrospectively simply because it draws upon prior conduct in determining one's competence to operate a motor vehicle. The state does not contend that it has any authority to proceed against any driver until after he has been convicted of at least one moving violation after the effective date of the act. Accordingly, at the time the act became effective, neither defendant fell within the defini-

tion of an habitual offender. On August 9, 1971, the effective date of this act, each defendant had 18 prior traffic violations. On that day, each was charged with notice that if he sustained two more traffic violations within 5 years of the first of his previous convictions, he was subject to being declared an habitual traffic offender within the new definition. Absent a 20th conviction, both men had every right to continue to operate a motor vehicle. When, however, each received his 20th conviction within this 5-year period, *and not until then,* he fell within the purview of the statute, and became subject to license revocation.

Therefore, RCW 46.65 did not take away or impair any vested right, neither did it impose any new duty, nor attach any disability on either defendant in respect to transactions already past. What was said in *State ex rel. Edelstein v. Huneke,* 138 Wash. 495, 499, 500, 244 P. 721 (1926), is applicable here. In construing a statute relating to the sentencing of those determined to be habitual criminals (RCW 9.92.090), it was said:

> The severer penalty provided by statute for one who is an habitual criminal is not imposed for any offense except the last one upon which the defendant has been convicted, and not yet sentenced. The hearing upon the habitual criminal charge is merely for the purpose of determining what manner of man the defendant is, so that the sentence upon the last offense (in this case the burglary charge) can be in accordance with the statute. *The question of previous convictions is important only to determine whether, taken in conjunction with the last offense, the defendant has shown a persistence in crime which authorizes the severer penalty.*

(Italics ours.)

We believe our holding is consistant with the spirit as well as the express intent of the statute. An habitual traffic offender is a menace on the public highways, and he is no less so because some of his convictions occurred prior to August 9, 1971. It was to protect the public, not to impose additional punishment on such people, that these laws were enacted. If, as here, a person is provided with adequate

constitutional safeguards to govern the revocation proceedings, the public as well as the alleged offender will receive the protection guaranteed them by the laws and the constitution of the state.

Judgment affirmed.

PEARSON, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied June 26, 1973.

Review denied by Supreme Court August 28, 1973.