[No. 18515. *En Banc.* January 9, 1925.]

EDWARD M. SHERWOOD, *Appellant,* v. THOMAS C. WISE et al., *Respondents.*[1]

CONTRACTS (40)—MECHANICS' LIENS (16)—VALIDITY—VIOLATION OF STATUTE—CONSTRUCTION—SERVICES OF ARCHITECT. The legislative intent of Rem. Comp. Stat., § 8270 *et seq.,* providing for the licensing of architects and, by § 8276, declaring any violation of the act shall be a misdemeanor and fixing the punishment therefor, was to make it unlawful for one not holding a license to hold himself out as an architect or enter into a contract to render architectural services, and such a contract is illegal and unenforcible.

SAME (40)—MECHANICS' LIENS (16)—VALIDITY OF CONTRACT—VIOLATION OF STATUTE—ACCEPTANCE OF SERVICES. Acceptance of architectural services rendered by an unlicensed architect unlawfully holding himself out as an architect, does not render the contract therefor legal or the agreed upon compensation recoverable.

CONSTITUTIONAL LAW (116) — EQUAL PROTECTION OF LAWS — LICENSES—ARCHITECTS. Rem. Comp. Stat., § 8270 *et seq.,* regulating the profession of architects and requiring a license for the practice thereof is not unconstitutional as an illegal regulation or prohibition of business or occupations.

MECHANICS' LIENS (106) — ENFORCEMENT — ATTORNEY'S FEES — WAIVER. A lien claimant is not entitled to the attorney's fee authorized by Rem. Comp. Stat., § 1141, where the defendants before suit tendered more than was due.

[1]Reported in 232 Pac. 309.

SAME (106)—ENFORCEMENT—ATTORNEY'S FEES—EVIDENCE. The court may fix a reasonable attorney's fee for the foreclosure of a lien, in the absence of any evidence as to what would be a reasonable amount.

Overruling Id., 130 Wash. 331.

PEMBERTON, J., dissents.

Appeal from a judgment of the superior court for Pierce county, Askren, J., entered April 27, 1923, upon findings in favor of the defendants, in an action to foreclose a mechanics' lien, tried to the court. Affirmed.

*Ralph Woods,* for appellant.

*Bates & Peterson,* for respondents.

*John A. Homer, amicus curiae.*

## ON REHEARING.

PARKER, J.—This appeal was before Department One of this court and a decision rendered therein on July 7, 1924, reversing the judgment of the superior court and directing a judgment to be rendered in favor of the plaintiff, Sherwood, and against the defendants, Wise and wife, for a larger amount than was awarded by the superior court. *Sherwood v. Wise,* 130 Wash. 331, 227 Pac. 323. A rehearing being ordered before the court *En Banc* and the case having been reargued therein, with the submission of additional briefs, we have arrived at the conclusion, and feel constrained to hold, that the disposition of the case by Department One was erroneous, and that its disposition by the trial court was correct.

Sherwood's assignor, Travis, entered into a contract of employment with Wise and wife by which he agreed as an architect to prepare plans and specifications for, and to superintend the construction of, a 61-room apartment house for them in Tacoma, con-

templated to cost between $30,000 and $40,000. Travis represented himself to Wise and wife to be an architect and capable of undertaking all such services; that is, the drawing of plans and specifications as well as the superintendence of the construction of the proposed building. He not only so represented himself before entering into the contract, but he signed the plans and specifications made by him for the construction of the building as an architect.

Travis claims that his agreed compensation was to be ten per cent of the total cost of the finished building, while Wise and wife claim that his agreed compensation was to be a lump sum of $2,500. Travis proceeded with the preparation of the plans and specifications and superintendence of the construction of the building to its completion, when it was found to have cost approximately $32,600. Wise and wife refusing to pay ten per cent of that sum demanded by Travis as his claimed agreed compensation, Travis assigned his claim to Sherwood, who now seeks recovery accordingly from Wise and wife and the foreclosure of his claim of lien therefor upon the building and the lot upon which it is situated. Wise and wife had paid to Travis $702 towards his services, and had offered to pay the balance of the $2,500 originally agreed upon, though they had insisted that the building was defectively planned and constructed to their damage in a much larger sum than the $2,500 agreed by them to be paid. This occurred before the assignment of the claim by Travis to Sherwood and the commencement of this action.

Wise and wife defended the action upon the grounds (1) that the agreed compensation of Travis was to be only $2,500; (2) that Travis so defectively planned and superintended the construction of the building that they

were damaged thereby in a sum greater than any possible amount due to Travis for his services under the contract, though the contract be a legal one giving Travis a lawful right to compensation for services thereunder; and (3) that Travis, holding himself out to them to be an architect and contracting with them as such, when in fact he was not a licensed architect under the laws of this state, is not in any event legally entitled to any recovery for his services.

The trial court found that the agreed compensation of Travis was to be $2,500. This finding is well supported by the evidence. The trial court also found that the building was so defectively planned and constructed by reason of the want of skill of Travis that, when it was completed, it was worth $1,650 less than it would have been worth if it had been planned and constructed with reasonable care and skill. While the decision of Department One indicates a different view upon this question, we are now inclined to agree with the trial court; though, as we proceed, we think it will appear that it will not be necessary to definitely decide this somewhat troublesome question of fact.

The trial court denied recovery upon the $2,500 compensation contract, upon the theory that no recovery could be had thereon because of Travis' holding himself out to Wise and wife as an architect and contracting with them as such, when in fact he was not a licensed architect under the laws of this state; but awarded recovery against Wise and wife for services rendered by Travis in superintending the construction of the building at the rate of $10 per day for 121 days, that is, $1,210 in all, less $702 paid to him by Wise and wife, rendering judgment in favor of Sherwood, as assignee of Travis, for $508, and decreed foreclosure of the lien claimed therefor accordingly. From this

disposition of the case, Sherwood appealed to this court, and thereafter Wise and wife also appealed. The latter appeal was, however, abandoned and dismissed by Wise and wife, so our only problem here is as to whether or not Sherwood was awarded recovery in an amount equal to or in excess of that to which he was entitled as the assignee of Travis.

Our legislature of 1919 passed an act relating to the licensing of architects. Laws of 1919, ch. 205, p. 719; § 8270 *et seq.*, Rem. Comp Stat. [P. C. § 146-1.] Section 1 of the act reads:

"Any person residing in or having a place of business in the state, who, before this act takes effect, shall not have been engaged in the practice of architecture in the state of Washington, under the title of architect, shall before assuming the title of architect, secure a certificate of his qualifications to practice under the title of architect, as provided by this act. Any person who shall have been engaged in the practice of architecture under the title of architect before this act takes effect, may secure such certificate in the manner provided by this act. Any person having a certificate pursuant to this act may assume the title architect. No other person shall assume such a title or use any abbreviation thereof, excepting only landscape architects and naval architects, and not excepting these two classes if they combine with their landscape and naval work respectively the planning of buildings and supervision of their erection."

Section 2 [Laws of 1919, p. 720], provides for a board of examiners. Section 3 [Laws of 1919, p. 720; Rem. Comp. Stat., § 8271], reads:

"Any citizen of the United States, or any person who has duly declared his or her intentions of becoming such citizen, being at least twenty-one years of age, may apply for examination or certificate of registration under this act. The examination shall have special reference to the construction and design of buildings,

and a test of knowledge of the candidate of the strength of materials and of his or her ability to make practical application of such knowledge in the ordinary professional work of an architect, and in the duties of a supervisor of mechanical work on buildings, and should also seek to determine his or her knowledge of the laws of sanitation as applied to buildings. The applicant who shall satisfactorily pass such architectural examination as shall be established by the board of examiners, shall be granted a certificate. The board of examiners in lieu of all examinations may accept:

"(a)  A diploma of graduation or satisfactory certificate from a recognized architectural school or college.

"(b)  Registration or certification as an architect in another state or country where the standard or qualifications for the same are not lower than those required by the board of examiners under this act shall be accepted by said board of examiners, and such architect may receive certification without examination."

Section 4 [Laws of 1919, p. 721; Rem. Comp. Stat., § 8272], provides for the manner of evidencing the right of persons practicing architecture at the time of the passage of the act, and for the issuance of license certificates to such practitioners. Section 8 [Laws of 1919, p. 723; Rem. Comp. Stat., § 8276], reads as follows:

"Any violation of this act shall be a misdemeanor punishable for the first offense by a fine of not less than fifty dollars ($50.00) and not more than one hundred dollars ($100.00), and for a subsequent offense by a fine of not less than two hundred dollars ($200.00) nor more than five hundred dollars ($500.00), imprisonment for not more than one year, or both."

This act does not in express terms make the mere rendering of architectural service by one not holding a license certificate unlawful, nor does it in express terms make a contract for such services by one not

holding a license certificate unlawful and unenforcible; but the language of the act manifestly expresses the legislative intent that it shall be unlawful for one not holding a license certificate to assume the professional title of architect and as such enter into a contract to render architectural services. Now that is just what Travis did with reference to the construction of this building. He not only held himself out to Wise and wife as being an architect possessing architectural skill and learning, prior to the making of his contract of services with them, but he prepared plans and specifications in such detail as is usual for the construction of buildings of the dimension and cost of the one in question. The several sheets of the drawings of the proposed building, of which the specifications were a part, were signed by Travis as architect. In the text of 13 C. J. 423, we read:

"Where a license or certificate is required by statute as a requisite for one practicing a particular profession, an agreement of a professional character without such license or certificate is ordinarily held illegal and void. This is true, for example, of an agreement made by an unlicensed or uncertificated physician, an attorney at law, a conveyancer, an engineer, or a school-teacher. The authorities are in accord on this point, where the license is required for public protection and to prevent improper persons from acting in a particular capacity and not for revenue purposes only."

Numerous decisions of the courts are there cited in the footnote lending unqualified support to this view of the law. In *Wedgewood v. Jorgens,* 190 Mich. 620, 157 N. W. 360, the court quotes the above text from 9 Cyc. 478, now found in 13 C. J. 423, in support of its holding that an unlicensed architect, the law requiring him to be licensed, cannot recover for architectural

services performed by him because his want of license renders the contract illegal and unenforcible. Our own decisions in *Kimball v. School District No. 122*, 23 Wash. 520, 63 Pac. 213, and *Deaton v. Lawson*, 40 Wash. 486, 82 Pac. 879, 111 Am. St. 922, 2 L. R. A. (N. S.) 392, involving claims of recovery sought by an unlicensed public school teacher and an unlicensed physician, are in harmony with this view of the law. In 30 A. L. R. 834 is an exhaustive note wherein may be found overwhelming support of the view of the law announced in the above quotation from Corpus Juris and our decisions in the *Kimball* and *Deaton* cases above noted. We think there is no escape from the conclusion that the contract for architectural services between Travis and Wise and wife, upon which Sherwood seeks recovery, was illegal and void and wholly unenforcible, leaving Travis and Sherwood, his assignee, without legal right of recovery thereon.

We think it needs no argument or citation of authorities to demonstrate that this statute, providing for inquiry into the learning and skill of the applicant and prescribing penalties for the assuming of the title of architect and contracting as such without a license certificate, was enacted for the protection of the public and the prevention of improper persons assuming the title of architect and contracting for services as such.

The suggested severability of the contract; that is, as to whether or not a part of it was for architectural services, and a part of it for services of a different nature for which recovery could legally be had, we think, becomes of no consequence in our present inquiry, since it is apparent from the record that the trial court did award to Sherwood, as Travis' assignee, added to the $702 already paid to Travis, more than he would in any event have been entitled to over and

above a reasonable compensation for his architectural services. We have seen that Wise and wife, by the dismissal of their appeal, have abandoned their claim of any excessive award to Sherwood.

Some contention is made in behalf of Travis and Sherwood rested upon the theory that Wise and wife accepted the building upon its completion as being planned and constructed with a reasonable degree of skill, substantially free from defects. On further consideration, we are not inclined to view the evidence as showing any such acceptance by Wise and wife, though Department One apparently viewed the evidence as showing such acceptance. However, even such an acceptance and approval by Wise and wife would not render the contract for architectural services legal, so as to render compensation therefor recoverable by Travis or Sherwood, his assignee. Observations made and authorities cited in *Minnesota Sandstone Co. v. Clark,* 35 Wash. 466, 77 Pac. 803, support this view of the law. Manifestly acceptance and approval of such services cannot make legal such a contract, any more than an original agreeing to the terms of such a contract can make it legal.

Contention is made that the act is unconstitutional. Our decisions in *In re Aubrey,* 36 Wash. 308, 78 Pac. 900, 104 Am. St. 952, 1 Ann. Cas. 927, considering an act requiring horseshoers to pass an examination and secure licenses before working at their trade, and *State ex rel. Richey v. Smith,* 42 Wash. 237, 84 Pac. 851, 114 Am. St. 114, 7 Ann. Cas. 577, 5 L. R. A. (N. S.) 674, considering an act regulating the business of plumbing and requiring plumbers to secure licenses before working at their trade, are invoked in this behalf. We think those cases are not controlling here; but that the constitutional question as here presented

is controlled by those decisions which deal with the statutory licensing of professions as distinguished from mere trades. Our decision in *State v. Carey,* 4 Wash. 424, 30 Pac. 729, relating to the licensing of physicians and surgeons, comes near being decisive in favor of Wise and wife in this case. Our decision in *State v. Walker,* 48 Wash. 8, 92 Pac. 775, 15 Ann. Cas. 257, holding the barbering license law to be constitutional, goes even farther in support of the constitutionality of this act. No case has come to our attention, and we think there is none, holding that a statutory requirement of a license to be procured by one prior to the practicing of a learned profession is unconstitutional. There was a time when the learned professions seemed to be in some degree limited to three in number, to wit, religion, law and medicine, but we apprehend that no such narrow view can justifiedly be taken in this progressive age. Indeed, it seems hard to conceive of any older or more thoroughly recognized branch of learning than that of architecture. In the Standard Dictionary we find the word "profession" defined in general terms as follows: "An occupation that properly involves a liberal education or its equivalent, and mental rather than manual labor; especially one of the three so-called learned professions." This is followed by the reference to the three above mentioned. Turning now to the Standard Dictionary's definition of the word "architect" we find, among others, this one: "One skilled in practical architecture; one whose profession is to devise the plans and ornamentation of buildings or other structures, and direct their construction." We think that architecture is generally recognized as a profession, and that its practice involves mental rather than manual skill, having to do with things that concern the safety and

well-being of the public in this preeminently building age; and that, therefore, the legislature may provide for the licensing of those who desire to assume the title of architect and hold themselves out to the world and contract for their services as such. We cannot see any constitutional objection to this law.

We are not holding that an owner may not employ a builder to construct a building for him without the services of an architect, but are only holding at this time that one who holds himself out to be and assumes the title of architect and contracts for his services as such, without being licensed as this law requires, cannot recover compensation for such services, because in so holding himself out and in so contracting he violates this law.

It is finally contended in behalf of Sherwood that, since the trial court's judgment has awarded recovery to him in a substantial sum and also awarded a foreclosure of his lien claim therefor, he is entitled to be allowed attorney's fees as provided by the lien statute. Section 1141, Rem. Comp. Stat. [P. C. § 9717]. This contention, we think, is answered as it was in substance by the decision of Department One, by the fact that Wise and wife tendered to Travis and Sherwood before the commencement of the action more than they were entitled to receive in any event. Thus the trial court did not abuse its discretion in refusing to allow attorney's fees as asked for. *Hughes & Co. v. Flint,* 61 Wash. 460, 112 Pac. 633. The Department decision, however, inadvertently and unnecessarily added this observation as an additional reason for disallowing the attorney's fees: "Moreover, there was no evidence on which to fix attorney's fees, and no stipulation that the trial court might find and fix any reasonable sum as attorney's fees." This observation seems to be out of

harmony with our decisions in *Warnock v. Itawis*, 38 Wash. 144, 80 Pac. 297; *Carr v. Bonthius*, 79 Wash. 282, 140 Pac. 339; and *Allen v. Allen*, 96 Wash. 689, 165 Pac. 889.

The decision of Department One is overruled to the extent herein indicated, and the judgment of the trial court is in all things affirmed.

MAIN, C. J., BRIDGES, MACKINTOSH, FULLERTON, and TOLMAN, JJ., concur.

PEMBERTON, J., dissents.