AMBRO ADVERTISING AGENCY, Appellee, v. SPEED-WAY MANUFACTURING COMPANY et al., Appellants.

No. 40382.

DECEMBER 9, 1930.

*Hann & Randall,* for appellants.

*Otto L. Schluter,* for appellee.

Evans, J.—The contract sued upon was admittedly fully performed by the plaintiff, and the amount sued for is justly due the plaintiff from the defendants unless the contract itself is void, as in violation of the statute above referred to. We have no occasion, therefore, to consider any question but that of the validity of the contract itself.

The plaintiff was a partnership, comprising Otto Ambroz and Harold Rowe, as partners, and was engaged in business under the firm name indicated in the title hereto. The written order signed by the defendants was addressed to the partnership under such name. The statute relied on by the defense was enacted in 1925. It is as follows:

"9866-a1. *Use of trade name—verified statement required.* It shall be unlawful for any person or copartnership to engage in or conduct a business under any trade name, or any assumed name of any character other than the true surname of each person or persons owning or having any interest in such business, unless such person or persons shall first file with the county recorder of the county in which the business is to be conducted a verified statement showing the name, post-office address, and residence address of each person owning or having any interest in the business, and the address where the business is to be conducted. * * *

"9866-a3. *Penalty.* Any person violating the provisions of this chapter shall, upon conviction, be punishable by a fine of not less than twenty-five dollars nor more than one hundred dollars, or by imprisonment in the county jail for a term not exceeding thirty days."

The question presented is whether the foregoing statute operates to render wholly void the contract sued on. The contention of the appellants is that, inasmuch as the contract was entered into in violation of the prohibitions of the statute, it was

necessarily void, even though the statute does not in terms declare such contract void. The contention for the appellee is that the contract itself was legitimate in every sense; that the statute should be construed, not as prohibiting the contract, or any other legitimate business done by plaintiff as a going concern, but rather, as the imposition of a duty upon the plaintiffs to file the information required by the statute, and as penalizing the failure to perform such duty.

The appellants rely for authority upon the analogy of our holdings in cases involving other subjects than that involved herein,—such as "Sunday contracts," and violations of prohibitory statutes relating to the practice of medicine and to the operation of machinery without safety appliances. In *Pike v. King,* 16 Iowa 49, we held that a contract made on Sunday, being prohibited by the statute, was, therefore, void and unenforcible. In *Lynch v. Kathmann,* 180 Iowa 607, we held that the plaintiff, who had failed to file his certificate authorizing him to practice medicine in this state, was not entitled to practice as a physician, and that he could not, therefore, recover for purported medical services. To the same effect, we held, in *Rader v. Elliott,* 181 Iowa 156, that a veterinarian was not entitled to practice as such until he had complied with the statutory conditions, and that he was not entitled to recover for services rendered as a purported veterinarian. In *Dillon & Palmer v. Allen,* 46 Iowa 299, we held that the owner of a threshing machine violated the statute when he operated his machine without boxing the joints, and that he could not recover compensation for the service rendered by him in such violation. The foregoing comprise the principal reliance of appellants, so far as our own cases are concerned. It will be noted that the prohibited act in each of the foregoing cases was clearly within the field of police power. The prohibition of "Sunday contracts" was deemed to be in the interest of public morals. The prohibition against operating dangerous machinery without boxing the joints was in the interest of public safety. The prohibition against the unauthorized practice of medicine was in the interest of the public health; and likewise, the veterinary practice. This fact is one to be borne in mind in putting a construction upon the statute now under consideration. To apply the prohibition of the present statute to all the business done in this state by firms operating under trade names, is to go

far beyond the scope of police power. As to business carried on under trade names, the statutory construction to be adopted must be applicable alike to all. It purports no discrimination. The legislative power to prohibit an occupation does not extend to all business carried on under trade names. To construe this statute, therefore, as such prohibition, would be to nullify it as unconstitutional. If it cannot be deemed a prohibition applied to *all* such business, neither can it be deemed a prohibition of *any*.

However, the legislative power to *regulate* a business may be sustained, notwithstanding absence of power to *prohibit* it. To give this statute any vitality, we must construe it, therefore, as regulatory only, and not prohibitive. As a regulatory measure, it imposes the duty upon a partnership to file certain information as stated therein. It imposes a statutory penalty for failure to comply with such requirement. Statutes of this character have often taken the form which appears in the present statute, whereby they appear to assume a legislative power of prohibition which is not possessed. We have always construed such statutes by giving effect to the legislative intent within the scope of the legislative power. A sufficient illustration of this rule of construction can be found in *State v. Gish*, 168 Iowa 70, wherein we construed the statute pertaining to automobile license.

The statute under consideration here is similar to those obtaining in many other states, and the question here presented is one which has been considered in many of the courts of such states, and this with some resulting diversity of opinion. We have no direct precedent of our own. We are, therefore, confined to the consideration of precedents from other states.

In *Kusnetsky v. Security Ins. Co.*, 313 Mo. 143 (281 S. W. 47), the Supreme Court of Missouri had before it a statute substantially identical with ours. It was held that the statute did not operate as a prohibition against the contract, so as to render the same invalid. The argument in support of the holding may be indicated by the following excerpts from the opinion:

"As we held in *Bassen v. Monckton*, supra [308 Mo. 641 (274 S. W. 404)], the statute does not, in terms, nor by implication, make void a contract entered into by a party under a fictitious name, but affixes a penalty for the violation of the statute, as for the commission of a misdemeanor. While the court will not lend its aid to a person who founds his action on a contract which con-

templates the violation of law, nevertheless, where a contract not prohibited by law has been fully executed by the person who seeks to enforce it, he may recover from the person receiving the benefit, although in rendering the service he was guilty of a misdemeanor. That was clearly stated in the case of *Smythe v. Hanson*, 61 Mo. App., l. c. 287, 288. Apply that principle to the facts in this case. What law was the plaintiff violating by accepting the policies of insurance on his property? It was his property. That is not disputed. He had a right to protect it by insurance, or by putting it in a fireproof vault. In the case of *Ditzell v. Shoecraft*, 274 S. W. 880, Arnold, J., of the Kansas City Court of Appeals, in a very thoughtful and well considered opinion, reviewed the authorities on this question, and thus summarized the result of his research (l. c. 884) : 'An examination of the Missouri cases relied upon by defendant shows they are all cases where the undertaking itself was forbidden under the statute, and they are not, therefore, decisive of the case at bar, wherein the undertaking, the acceptance, was in no sense made unlawful by the statute. It is the universal rule, applicable to statutes such as the one here involved, that, where acts sought to be regulated are in themselves lawful, and no qualification therefor required, the penalty is directed only against the person who violates the statute.' * * * So each and every case cited by respondent to sustain his position is where the contract in issue, in and of itself, contemplated a violation of law. There is nothing of that kind in this contract. Applying for an insurance policy and accepting one on property owned, in good faith, by the party applying for it, is not an unlawful transaction. If the defendants are correct, see how it would operate : One could buy on credit a car from the Capital Motor Company; he could get his gasoline and have his car repaired at the Efficiency Garage; he could get his groceries at the Delmonico, his ice cream at the Purity Ice Cream Company, his clothing at the Golden Eagle Clothiers, his milk from the Model Dairy, his bread at the Home Bakery, and, after having worn out and eaten all the stuff thus acquired, without paying for it, he could defeat all suits brought to recover pay, because those names had never been registered. His contracts were void, and he owed nothing. · And a person who would engage in that enterprise would be, by defendants' code, a

righteous citizen, enforcing the law because he was guilty of the most nefarious frauds!''

In *Paragon Oil Syndicate v. Rhoades Drilling Co.*, 115 Tex. 149 (277 S. W. 1036), the Supreme Court of Texas said:

''The right to engage in business in an assumed name is a privilege the law of this state, prior to this enactment, has permitted. This act recognizes this right, and concedes the privilege. It, however, regulates the privilege of conducting business in an assumed name by requiring that the certificate be filed. It does not declare the use of the assumed name wrongful. It permits it. Realizing that the assumed name may be used in a manner harmful to the public unless the identity of the person or persons engaged in the business is known, it requires a disclosure. The assumed name itself is not denounced as harmful. The fact that harm may result from a wrongful use of the name is what induced the legislature to regulate its use. The regulation requires the certificate, and nothing more. To enforce this requirement, a specific penalty is imposed. It is not the use of the name which constitutes the crime, but the failure to comply with the regulatory requirement. The use of the name in a written contract would disclose no element of crime, for the assumed name is only incidental to what the law has denounced as criminal. The crime has no necessary direct relation to the business transacted. The contract entered into in the conduct of the business does not constitute the crime, and the law will not presume that harm has resulted from the contract. So the rule that one who has violated the law is not permitted to recover on evidence which shows his crime in connection with the subject-matter in litigation is not applicable here.'' .

The line of argument indicated in the foregoing excerpts is that adopted by many other courts, including the following: *Sagal v. Fylar*, 89 Conn. 293 (93 Atl. 1027) ; *People ex rel. Power v. Rose*, 219 Ill. 46 (76 N. E. 42) ; *Piggly-Wiggly Stores v. Lowenstein*, 197 Ind. 62 (147 N. E. 771) ; *Toelke v. Toelke*, 153 La. 697 (96 So. 536) ; *Rutkowsky v. Bozza*, 77 N. J. Law 724 (73 Atl. 502) ; *Black v. New York Life Ins. Co.*, 70 Misc. Rep. 532 (127 N. Y. Supp. 409) ; *Uhlmann v. Kin Daw*, 97 Ore. 681 (193 Pac. 435) ; *Lamb v. Condon*, 276 Pa. St. 544 (120 Atl. 546).

As against the foregoing, a lesser number of courts hold to

the contrary. Notably among these are the courts of Kentucky and Michigan. Responsive to the holding of the Michigan court, amended legislation was enacted, which nullified the effect of the Michigan decision, and conformed in terms to the law as construed in the other states here noted.

We think that we are in line with the clear weight of authority in sustaining the validity of the contract in question. As so construed, the statute provides its own exclusive penalty.

The judgment of the district court is, accordingly,—*Affirmed.*

MORLING, C. J., and FAVILLE, KINDIG, and GRIMM, JJ., concur.