## DUNN v. FINLAYSON.

### No. 1470.

Municipal Court of Appeals for the District of Columbia.

Argued March 29, 1954.

Decided May 13, 1954.

C. Louis Knight, Washington, D.C., for appellant.

Douglas A. Clark, with whom William F. Fitzgerald, Washington, D.C., was on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Appellant engaged appellee to prepare plans and specifications for a new dwelling

house and to superintend the construction of it. For such services appellant agreed to pay $2,250 and paid $500 on account, but on completion of the building he refused to pay the balance. Appellee sued for $1,750 and appellant counterclaimed for the $500 paid on account. This appeal is from a judgment granting appellee's claim and denying appellant's counterclaim.

Although appellant advanced several defenses at the trial, he has appealed on the sole ground that the contract was illegal and void and conferred no rights upon appellee. This argument is based on the contention that the contract was in violation of the Architect's Registration Act of December 13, 1924, as amended May 29, 1928,[1] and as further amended September 7, 1950.[2]

The Act of 1924, as amended in 1928, which was the Act in force when the contract was executed, created a board of examiners and registrars of architects and provided for examination and registration of architects. Section 14 of the Act[3] provided: "Except as otherwise provided in this chapter, any person wishing to practice architecture in the District of Columbia under the title of architect shall, before being entitled to be or be known as an architect, secure from such Board a certificate of qualifications to practice under the title of architect, as provided in this chapter." Section 30[4] made it a misdemeanor, punishable by fine not exceeding $200 or imprisonment for not more than one year, or both, for one to "use" the title "'architect' or 'registered architect'" without first having complied with the provisions of the Act. It was conceded by appellee that he was not registered under the Act and did not come within any of its exemptions. Appellee likewise conceded that in the contract he designated himself as "architect and supervising engineer." It is plain that appellee's use of the title "architect" was in violation of the statute. Appellant urges that we apply to this case the principle stated in Hartman v. Lubar, 77 U.S.App.

D.C. 95, 133 F.2d 44, 45, certiorari denied, 319 U.S. 767, 63 S.Ct. 1329, 87 L.Ed. 1716, a case involving a contract in violation of the usury law, where it was said: "The general rule is that an illegal contract, made in violation of a statutory prohibition designed for police or regulatory purposes, is void and confers no right upon the wrongdoer." That principle is well established in this and other jurisdictions. We applied it in Rubin v. Douglas, D.C.Mun.App., 59 A.2d 690, and ruled that one who engaged in the practice of the healing art without being licensed could not recover for his services. Our problem here is whether that principle applies to the circumstances of this case.

Although the Act purported to regulate the practice of architecture, it made only a half-hearted attempt at regulation. Most notably it neither defined the practice of architecture nor prohibited the practice of architecture by anyone. It merely prohibited the use of the title architect by one who had not complied with the Act. However, it was entirely legal for such a party to practice architecture under some other title, such as designer. Therefore, appellee's contract to perform architectural services, and the performance of his contract, were not illegal. The only illegality connected with it was the use of the title architect. This case is clearly distinguishable from the Hartman case, where the contract itself was in violation of the law, and the Rubin case, where the services were performed in violation of the law.

The Act under consideration can hardly be called a regulatory Act because it did not in fact regulate. For the same reason it cannot be said that the purpose of the Act was to protect the public welfare since it only prohibited the use of the title of architect and in no way restricted the actual practice of architecture. Furthermore, the Act, although it imposed criminal liability for wrongful use of the title, did not expressly provide that one who wrongfully

1. Code 1940, § 2–1001 et seq.
2. Code 1951, § 2–1001 et seq.
3. Code 1940, § 2–1014.
4. Code 1940, § 2–1030.

used the title would thereby be deprived of his right to recover for architectural services rendered. We, therefore, are of the opinion that appellee's wrongful use of the title of architect did not deprive him of the right to recover for services which were legally rendered.[5]

So far we have considered only the Act of 1924 as amended in 1928 because that was the Act in effect when the contract was executed on August 28, 1950. Appellant, however, contends that the law as amended by the Act of September 7, 1950, which became effective ninety days after its enactment, is applicable because construction of the house which began in the fall of 1950 was not completed until the summer of 1951. The 1950 amendment was passed in recognition of the deficiencies existing in the prior law. This Act, unlike the previous Act, stated in its title that its purpose was "to safeguard life, health, and property, and to promote the public welfare." It defined the practice of architecture and not only prohibited the use of the title architect, but prohibited the practice of architecture by one not qualified as required by the Act.[6] It is a true regulatory act designed for the public welfare, and we have no doubt that one who engages in the practice of architecture in violation of the act would have no right to recover for such services. Rubin v. Douglas, supra. Our question is whether appellee in completing his contract with appellant engaged in the practice of architecture after the effective date of the 1950 Act.

The 1950 Act defines the practice of architecture as follows:

"The practice of architecture within the meaning and intent of this Act consists of rendering or offering to render services by consultations, preliminary studies, drawings, specifications, or any other service in connection with the design of any building or addition or structural alteration thereto, whether one or all of these services are performed either in person or as the directing head of an organization." Code 1951, § 2–1014(b).

It will be observed that, as defined, the practice of architecture is restricted to acts done "in connection with the design of any building or addition or structural alteration thereto," and does not extend to the actual construction or superintendence of construction of a building. As far as the record discloses appellee had drawn the plans and prepared the specifications prior to the effective date of the 1950 Act. The record indicates that before such date the building was under construction although not completed for some months thereafter. Thus it appears that the services rendered by appellee after the 1950 Act became effective were not architectural services but consisted of superintending the construction of the building. We therefore hold that there was no violation by appellee of the 1950 Act.

One further point remains to be considered. The contract contained this provision: "The Architect and Supervising Engineer further agrees to prepare all contracts between the Owner and the various sub-contractors, and to submit same to the Owner for his approval and signature." Appellant argues that by this provision appellee undertook to render legal services for appellant and that such undertaking was illegal because appellee was not a lawyer. The record does not show what contracts, if any, appellee prepared for appellant, although appellee testified generally that he performed all the services he agreed to perform by the contract. If he prepared any contracts there is nothing to show what he did in preparing them. Conceivably he may only have undertaken

---

5. Our holding in this respect may appear to be contrary to the holdings in Sherwood v. Wise, 132 Wash. 295, 232 P. 309, 42 A.L.R. 1219, and Hickey v. Sutton, 191 Wis. 313, 210 N.W. 704. Many cases dealing generally with the question may be found in the annotations in 30 A.L.R. 834, 42 A.L.R. 1226, and 118 A.L.R. 646.

6. Code 1951, § 2–1014.

to see that the bids of subcontractors conformed to the plans and specifications. There is a complete absence of any evidence that appellee undertook to advise appellant of his legal rights or to safeguard them. Under these circumstances we cannot hold that appellee either agreed to or did engage in the unauthorized practice of the law. Cf. Merrick v. American Security & Trust Co., 71 App.D.C. 72, 107 F.2d 271, certiorari denied, 308 U.S. 625, 60 S.Ct. 380, 84 L.Ed. 521.

Affirmed.