DAVIS, BRODY, WISNIEWSKI, a partnership, appellant, v. CHARLES H. BARRETT, appellee.

No. 50613.

JUNE 12, 1962.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for appellant.

Davis, Huebner, Johnson, Burt & Fulton, of Des Moines, for appellee.

HAYS, J.—Appeal from a ruling on law points under rule 105, R. C. P. The question at issue is: "Can the plaintiffs herein maintain an action in the courts of Iowa for architects' fees based upon a contract executed by the plaintiffs to perform architectural services in Iowa, when at the time of the execution of the contract plaintiffs were not registered architects in Iowa, as required by chapter 118, Code of Iowa, and more particularly section 118.6 thereof?" The trial court ruled plaintiffs' contract was null and void and dismissed their petition. The question thus presented is one of first impression with this court.

Appellants are members of a partnership of architects in New York. Appellee is a resident of Polk County, Iowa. June 4, 1959, the parties executed a written agreement wherein appellants, architects, agreed to furnish architectural services for appellee, owner, in the erection of a shopping center in Des

Moines, Iowa. At the time of the execution of the contract, appellants did not have certificates of registration as architects, although such certificates were obtained in August and September 1959. Appellants performed as per the contract and this action is to recover fees due them under the contract. Appellee pleaded the lack of certificates of registration as a defense, which, as above noted, was sustained by the trial court.

I. Chapter 118, Code of Iowa, was enacted in 1927 and appears in the Code under Title V, Regulations Under Police Power. Chapter 118, Code, 1958, is entitled Registered Architects. Sections 118.1 to 118.5 inclusive provide for the appointment of a board of examiners and outlines its duties.

Section 118.6 provides: *"Any person wishing to practice architecture* in the state of Iowa *under the title 'Architect' shall secure* from the board *a certificate* under the title 'Architect' as provided by this chapter. Each member of a firm or corporation practicing architecture must have a certificate of registration under the provisions of this chapter * * *."* (Italics added.)

Section 118.7 states: *"Nothing* contained in this chapter *shall prevent any person* from making plans and specifications or supervising the construction of any building or part thereof, for himself or others, *provided he does not use any* form of the word or title *'Architect'."* (Italics added.)

Sections 118.8 to 118.11 inclusive provide for examinations, issuance of certificate, renewals and fees incidental thereto, which fees are to be used solely for the purposes of the chapter. Section 118.13 provides for revocation of certificates.

Section 118.14 is as follows: "On and after March 28, 1927, the use of the title *'Architect'*, or the use of any word or any letters or figures indicating or intending to imply that the person using the same is an architect, *without compliance with the provisions of this chapter* * * * *shall be deemed a misdemeanor* * * * ." (Italics added.)

II. "Police power", while it has never been definitely defined, is generally held to mean the power, inherent in the Sovereign, to prohibit or regulate certain acts or functions of the populace as may be deemed to be inimical to the comfort, safety, health and welfare of society. The instant chapter appears to be the exercise, or attempted exercise, of that power.

Analyzing the chapter certain things are abundantly clear. Nowhere therein appears any prohibition against the carrying on of the business of an architect. While such business is not defined in the chapter, Webster's International Dictionary defines an architect as "a person skilled in the art of building; a professional student of architecture or one who makes it his occupation to form plans and designs of and to draw up specifications for buildings and to superintend their execution." Section 118.7, while in no sense a definition, specifically authorizes the doings of the very things which are normally performed by architects, with absolutely no regulations attached in so far as the work and functions are concerned. The legislature has nowhere in the chapter indicated anything in the performance of architectural functions that are inimical to the comfort, safety, health and welfare of society.

Section 118.14 may perhaps be considered as regulatory in so far as the use of the term "Architect" is concerned, in that it provides a penalty for the use thereof without a certificate. It does not however in any way restrict or curtail the force and effect of section 118.7. In the penalty provided, nothing is said relative to the legality of any contract which may have been entered into by one using the title of "Architect", though he lacks a certificate. It is the act of using the title "Architect", not the performance of architectural services, that is penalized. To say that, under the situation at hand, the penalty also includes a prohibition of use of our courts to collect for services legally performed is to insert into section 118.14 something which the legislature did not, directly or indirectly, say. While by the enactment of section 118.14 the legislature may have found the use of the title "Architect", without a certificate, to be inimical to the comfort, safety, health and welfare of society, and thus be an exercise of the police power, it is not the function of the court to give to such exercise of police power an effect beyond that clearly intended by the legislature.

The general rule appears to be that a contract made in the course of a business or occupation for which a license is required by one who has not complied with such requirement is unenforceable where the statute expressly so provides, or where

1182

it expressly or impliedly, as a police regulation, prohibits the conduct of such business without compliance. 53 C. J. S., Licenses, section 59; 33 Am. Jur., Licenses, sections 70 and 71; Annotations, 82 A. L. R.2d 1429. See also Pangborn v. Westlake, 36 Iowa 546; Ambro Advertising Agency v. Speed-way Manufacturing Co., 211 Iowa 276, 233 N.W. 499.

Cases from various other jurisdictions bearing upon this question are cited by both sides. Each side cites a case very similar factually, but with opposite results. Appellee cites Sherwood v. Wise, 132 Wash. 295, 232 P. 309, 42 A. L. R. 1219, which bars a recovery. Appellants cite Dunn v. Finlayson (Municipal Ct. App. D. C.), 104 A.2d 830, which permits recovery. We have examined these cases and are of the opinion that the reasoning and result as expressed in the Dunn case is the correct one and are inclined to adopt the same.

We hold that conceding chapter 118 to be a police power measure, it does not go to the extent of declaring the contract for architectural services void and that the trial court was in error. The case is reversed and remanded for further hearing upon the merits.—Reversed and remanded.

LARSON, PETERSON, THORNTON and MOORE, JJ., concur.

OLIVER, J., GARFIELD, C. J., and THOMPSON and SNELL, JJ., dissent.

OLIVER, J. (dissenting)—I respectfully dissent.

The district court adjudicated the law point submitted to it, as follows:

"That the contract executed by and between the plaintiffs and defendant to perform architectural services in the State of Iowa was executed at a time when the plaintiffs were not registered as architects in the State of Iowa as required by the provisions of Chapter 118 of the Code of Iowa, and more particularly Section 118.6 thereof, and in violation of Section 118.14 thereof, and is therefore illegal and void, and the plaintiffs cannot maintain an action upon said contract."

Based upon this conclusion the district court thereafter

dismissed the action and rendered judgment against plaintiffs for costs.

Chapter 118, Code of 1958 (1962) entitled, Registered Architects, is not a revenue measure. One reason is, it is not designed to produce revenue. All moneys received are held in a fund to pay operating expenses. Chapter 118 is in the Police Power Division of the Code. It is a regulatory measure for the protection and safety of the public. The text in 3 Am. Jur., Architects, at page 998, states "It is well settled that the state may, in the exercise of the police power, thus regulate the profession * * * ."

6 C. J. S., Architects, at page 296, states:

"A legislature having authority to deny the right to practice architecture to all except those duly qualified may also deny the right to unqualified architects to advertise and to hold themselves out as such, and it may forbid using the name of 'architect' by one not entitled to use it, as well as forbid the practice of architecture by one not entitled to practice."

At page 297:

"Under statutes directed against the use of the title only, or failing to provide that a license is a prerequisite to the practice of architecture, and failing to penalize such practice without a license, unlicensed architects are not precluded from practicing their profession so long as they do not hold themselves out to be architects * * * ."

The text in 3 Am. Jur., Architects, at page 999, states:

"* * * The effect of the failure of an architect or one holding himself out as an architect to procure a license to practice his profession on the validity and enforceability of a contract for his services or upon his right to recover for services rendered seems to depend upon the purpose of the legislature in requiring the license. If the purpose in requiring a license is to furnish protection to the public by preventing incompetent persons from assuming to act in a particular capacity, the contract of an unlicensed person is invalid. Accordingly, the rule has been laid down that the failure of one holding himself out as an architect to procure a license required for public protection and to bar those lacking in the requisites of learning

and skill precludes recovery for professional services rendered in his capacity as an architect. Nor is his contract rendered enforceable by virtue of the fact that his employer was informed that he did not have a license."

See annotations in 30 A. L. R. 851; 42 A. L. R. 1228; 118 A. L. R. 651.

It may be observed the majority cites no statements from texts which refer especially to architects and cites only two contrary decisions from other jurisdictions. This might lead to the erroneous conclusion that these two were the only decisions directly in point and that the decisions were evenly balanced in number. The one of these which the majority elects to follow is Dunn v. Finlayson, 104 A.2d 830, Municipal Court of Appeals, D. C. That case held the wrongful use of the title, architect, did not deprive the user of the right to recover for services legally rendered. However, a footnote to the Dunn case states:

"Our holding in this respect may appear to be contrary to the holdings in Sherwood v. Wise, 132 Wash. 295, 232 P. 309, 42 A. L. R. 1219, and Hickey v. Sutton, 191 Wis. 313, 210 N.W. 704. Many cases dealing generally with the question may be found in the annotations in 30 A. L. R. 834, 42 A. L. R. 1226, and 118 A. L. R. 646."

Hence, it appears the Municipal Court of Appeals realized this was a minority rule. However, there was little possibility the Dunn decision would thereafter cause trouble in that jurisdiction since it was based upon a statute no longer in existence.

F. F. Bollinger Co. v. Widmann Brewing Corp., 339 Pa. 289, 292, 293, 14 A.2d 81, 83, denied recovery for architectural and engineering services under a contract governed by "The Architects Act", stating:

"* * *. Only those who have registered are entitled to use the designation 'registered architect', and the use of the title 'architect' is restricted to those previously engaged in the practice of the profession who have filed an affidavit to that effect with the board. Section 13, as amended by the Act of 1933, provides: '* * * it shall be unlawful for any person * * * to enter upon the practice of architecture in the State of Pennsylvania, or to hold himself or herself forth as an architect or as a

"registered architect", * * * unless he or she has complied with the provisions of this act. * * * This act shall not be construed to prevent persons other than architects * * * from designing buildings and supervising their construction, provided their drawings are signed by the authors with their true appellation as engineer or contractor or builder or carpenter, but without the use in any form of the title of architect.' Section 14 makes violation of the act a misdemeanor, and prescribes penalties therefor."

In that case the plaintiff pointed out there was no express prohibition against the enforcement of contracts made in violation of such statutes. But the court said:

"* * *. However, it is well settled that the courts will not lend their aid to the enforcement of unlawful contracts which are founded upon transactions in violation of a public policy declared by the legislature. We have followed this principle and denied recovery for services where there has been a failure to comply with statutory requirements for licensing and registration. In many such cases there was no express provision in the statutes denying recovery upon the contract."

In Sherwood v. Wise, 132 Wash. 295, 300, 232 P. 309, 311, 42 A. L. R. 1219, 1223, one Travis represented himself to be an architect and signed as an architect plans and specifications made by him for the construction of an apartment house. In denying recovery the court stated:

"This act does not in express terms make the mere rendering of architectural service by one not holding a license certificate unlawful, nor does it in express terms make a contract for such services by one not holding a license certificate unlawful and unenforceable; but the language of the act manifestly expresses the legislative intent that it shall be unlawful for one not holding a license certificate to assume the professional title of architect and as such enter into a contract to render architectural services. Now that is just what Travis did with reference to the construction of this building."

Another case directly in point is Hickey v. Sutton, 191 Wis. 313, 210 N.W. 704.

The majority opinion decides the case on the ground that,

chapter 118 "does not go to the extent of declaring the contract for architectural services void." It cites no authority for this decision.

GARFIELD, C. J., and THOMPSON and SNELL, JJ., join in this dissent.