Edward F. WARDE, Plaintiff-Appellee,

v.

Marvin B. DAVIS and Barbara Davis, Defendants-Appellants.

No. 73–1080.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 11, 1973.

Decided March 19, 1974.

Anthony Zarlengo, Denver, Colo., for defendants-appellants.

John J. Mullins, Jr., Denver, Colo., for plaintiff-appellee.

Before PHILLIPS, HILL and DOYLE, Circuit Judges.

HILL, Circuit Judge.

This diversity action involves a contract dispute over sums allegedly due appellee Warde for landscape architectural services performed by him for appellants Barbara and Marvin Davis. The trial court found appellants liable for breach of contract and awarded appellee $13,200 plus interest. Following argument to this court, and after reviewing the entire record, we concluded that the findings of fact were insufficient for a proper review of the case. It was therefore remanded to the trial court for the purpose of making sufficient and adequate findings of fact in compliance with Rule 52, F.R.Civ.P. Adequate findings of fact subsequently were made and the case is now before us for a proper determination.

The facts are simple. Appellants purchased real property in Englewood, Colorado, for the purpose of building a luxurious home. Desiring an aesthetically beautiful landscape to complement their new home, appellants asked Warde to design and supervise the landscape. Warde, a renowned landscape architect living in Beverly Hills, California, accepted the offer, but only on his own terms. These terms were set out in a letter to appellants dated September 19, 1968.

The letter stated that appellants had requested Warde "to design and draw up Landscape Plans and Specifications" for their residence and that said plans were to consist of the following:

1. Landscape Construction Plans showing circular drive and parking area, tennis court and tennis pavilion, future swimming pool, gazebo or equivalent, location of air conditioning compressor, sun bathing area, enclosed

play area with recessed trampoline, recessed sandbox and other play equipment. Also incorporated in this Plan will be the location of major trees, garden lighting, outline of planting areas, location and description of any necessary walls, fences, and screens, garden paths, and lawn area and other garden accessories.

2. Landscape planting plans showing location, size, and description of all planting material to be installed.

The letter further stated the landscape plans would cost $1,800 and that "there will be, in addition, a supervision fee of 15% of the total amount spent." Finally, the letter provided that Warde would be reimbursed for all expenses incurred in traveling to and from the job site from Los Angeles, California. Although reluctant to accept the 15% supervision fee, appellants ultimately relented and agreed to Warde's terms.

Once the landscape plans were tentatively drawn construction began, and shortly thereafter disagreements between appellants and Warde erupted. Appellants felt that Warde's landscape plan specifications were too general to be acted upon by contractors. They also felt that Warde was not spending adequate time on the job, but rather was delegating many of his supervisory functions to contractors. Because he was not performing his work as appellants had anticipated, Warde's services were terminated on November 25, 1969. This lawsuit followed.

At trial appellant Davis testified that Warde spent very little time at the job site. Warde would come out to Englewood for one day and then fly back to Los Angeles, leaving all supervisory work to the subcontractors. He further testified that he and his wife placed many calls to Warde requesting him to come out more frequently and give the job closer supervision; but to no avail. He also intimated that Warde's landscape plan specifications were too vague,

as evidenced by the fact that on numerous occasions he or his wife received telephone calls from contractors asking for an explanation of Warde's landscape plans.

Warde denied being derelict in his supervisory duties. He testified that it was his practice to design the landscape, select locations for the construction, and select the aesthetically appealing material to be used in the construction. Much of the actual supervision was left to the contractor. As for landscape plan specifications, Warde conceded that details were left up to his contractors. Although landscape architects usually furnish detailed plans showing contractors what must be done, it was his procedure to utilize detailed specifications supplied by the contractors. Warde's position is that technical specifications for a construction project can best be made by the experts in their respective fields, i. e., the contractors.

The case was tried to the court without a jury. In the trial appellants asserted that Warde should not be allowed to recover because: (1) he violated state law by practicing landscape architecture in Colorado without a Colorado license; (2) he failed to execute the contract according to its terms; and (3) the contract was a nullity because there was no mutual meeting of the minds on the meaning of "supervision". The trial judge rejected these arguments and held that Warde was entitled to recover the 15% supervision fee on the cost of all work completed on or prior to his termination on November 25, 1969, plus the balance due on his landscape plans and reimbursement for travel expenses. He was also entitled to a 15% fee on that part of a swimming pool completed by November 25. In the final judgment Warde was awarded $13,200 for expenses and supervision fees plus $2,369.50 in interest.

On appeal four issues are presented for our consideration. Appellants first charge that Warde's failure to register

as a landscape architect pursuant to Colorado statutes regulating the practice of architecture bars any recovery. Secondly, that it was error to allow Warde a supervision fee on those items completed on or shortly after the date of his termination. Thirdly, that it was error to conclude the letter of September 19, 1968 constitutes an agreement between the parties. Finally, that it was error to assess interest on the judgment.

■ Whether failure to register as a landscape architect pursuant to Colorado law invalidates the contract between appellants and Warde raises a question not heretofore answered by the Colorado Supreme Court. We therefore are bound by the well settled rule that when a state court has not decided the question, the federal district court's view of state law will be given great weight and credence. United States v. Hershberger, 475 F.2d 677 (10th Cir. 1973); In re Privett, 435 F.2d 261 (10th Cir. 1970).

The two applicable statutes state in part:

C.R.S.1963, 10–2–2 (1967 Cum.Supp.). Qualifications for practice—seal—(1) No person shall use the designation "landscape architect" or "landscape architecture", or advertise any title or description tending to convey the impression that he is a landscape architect, or practicing landscape architecture, unless such person is a registered landscape architect, and shall comply with the provisions of this article. Every holder of a registration shall display it in his principal office, place of business, or place of employment.

C.R.S.1963, 10–2–6 (1967 Cum.Supp.). Exemptions—(3) None of the provisions of this article shall apply to the business conducted in this state by any horticulturist, nurseryman . . . or any other person, including, but not limited to, their right to plan and supervise in connection therewith, except that no such person

shall use the designation "landscape architect", "landscape architecture", or any description tending to convey the impression that he is a registered landscape architect unless he is registered as provided in this article.

The district court interpreted these statutes as prohibiting a person from *holding* himself out as an architect rather than prohibiting a person from engaging in the business of landscape architecture. Davis, Brody, Wisniewski v. Barrett, 253 Iowa 1178, 115 N.W.2d 839 (1962). Unquestionably the statutes specifically prohibit a person from using any title tending to convey the impression that he is a landscape architect unless registered by Colorado, but nowhere do the statutes expressly prohibit a person from engaging in the landscape architectural business without a Colorado license. The statutes are apparently an attempt to prevent fraud by unqualified persons who use the title "landscape architect" as a guise for soliciting clients. The statutes are directed more toward preventing misrepresentations than preventing the practice of landscape architecture.

Appellants counter this argument by citing numerous cases where the Colorado courts have held service statutes to prohibit engaging in a service without a Colorado license, but in each case the statute expressly prohibited a person from engaging in a business without first obtaining a license. We do not find such an express prohibition here.

■ There is no proof appellants were defrauded into employing Warde as their landscape architect. Appellants solicited Warde in the State of California to perform the services now in question. The record does not disclose that Warde represented himself to appellants as a landscape architect licensed by the State of Colorado. Nor is there any evidence that appellants selected Warde because they believed he was an architect licensed by Colorado. Rather the evi-

dence is that appellants did not feel there were any landscape architects in Colorado qualified to do the work so they searched elsewhere to find a suitable architect. Davis is a competent businessman who unquestionably knew what he was doing when he employed Warde. We thus cannot find where Warde breached Colorado's holding-out statutes in accepting employment with appellants.

■ Appellants next argue the trial court erred in concluding that the letter of September 19, 1968, constitutes a valid contract between the parties. As noted earlier, that letter listed certain landscape plans to be drawn by Warde and stated the plans would cost $1,800 plus a supervision fee of 15% of the total amount spent. Appellants now charge there was no meeting of the minds on the terms "specifications" and "supervision". Davis testified that he thought Warde would draw detailed specifications permitting subcontractors to proceed to fulfill the specifications, whereas in fact Warde relied upon the contractors for the detailed specifications. Davis also assumed that Warde's supervisory function included being on the job site while work was proceeding to insure that the subcontractors were performing their work according to Warde's specifications. This failure by both parties to agree on Warde's duties, appellants argue, is a material breach which voids the contract.

Our review of the record convinces us there was a meeting of the minds on the terms of the contract, and we therefore reject appellants' contentions. Unquestionably Davis considered the September 19 letter an acceptable contract, because on October 10, 1968, he sent Warde a letter specifically approving the letter-contract and enclosing a check for $500 as a retainer fee. Apparently Warde's modus operandi was accepted by appellants for quite some time because they retained Warde for over a year. During this time Warde was paid over $9,900 for traveling expenses and services rendered. Appellants' retaining of Warde for over a year disposes of any argument that the contract failed for lack of a meeting of the minds. *See* Hensel Phelps Const. Co. v. United States, 413 F.2d 701 (10th Cir. 1969).

■ Appellants next charge the trial court with error in concluding that Warde was entitled to a supervision fee on certain items. The trial court, after hearing all the evidence and viewing all exhibits, determined that Warde was entitled to his expenses plus a 15% supervision fee on those items contracted for and completed on or before the date of his termination.

We have reviewed the record carefully and are convinced there is sufficient evidence to support the trial court's determination.

■ Appellants' final argument is that the trial court erred in allowing Warde interest from December 1, 1970. It is their position that Warde recovered under a theory of quantum meruit, which is a claim for unliquidated damages, and thus interest should not be allowed prior to judgment. As we mentioned earlier, the district court concluded there was a binding contract between Warde and appellants; hence the judgment was based upon breach of contract rather than quantum meruit. Warde was awarded interest from the time the money was due, and under Colorado law this is a proper determination. Harvey v. Denver & R. G. R. Co., 56 Colo. 570, 139 P. 1098 (1914); Donley v. Bailey, 48 Colo. 373, 110 P. 65 (1910); 1963 C. R.S. 73-1-2.

After carefully reviewing the entire record we agree with the trial court's decision and accordingly affirm it in all respects.