**IN THE COURT OF APPEALS OF IOWA**

No. 24-0888
Filed March 5, 2025


**BMO HARRIS BANK, N.A. d/b/a BANK OF THE WEST and JCB FINANCE,**
    Plaintiff-Appellee,

**vs.**

**WINDRIDGE IMPLEMENTS, LLC,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Winneshiek County, John J. Sullivan,

Judge.


A limited-liability company appeals a monetary judgment against it for an

unpaid contractual obligation.  **AFFIRMED.**


Andrew P. Nelson of Meyer, Lorentzen & Nelson, Decorah, for appellant.

Thomas H. Burke, Peter J. Chalik (until withdrawal) and Nicholas J. Gral of

Whitfield & Eddy Law, Des Moines, for appellee.


Heard by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Windridge Implements, LLC (Windridge) appeals the district court's ruling ordering it to pay unpaid contractual damages to BMO Harris Bank, N.A.[1] Upon our review, we affirm.

### I.    Background Facts and Proceedings.

In September 2017, the Bank, doing business as JCB Finance, Inc. (JCB), and Mathis Field Services, LLC entered into a farming equipment lease agreement. Windridge, an implement dealership that sells agricultural equipment, facilitated the lease for a tractor and agreed to pay a recourse payment up to $16,925.51 at the end of the lease term if the tractor sold for less than $252,190.11. The contract also provided Windridge a right of first refusal to purchase the tractor at the end of the lease.

Concurrently, the Bank entered into a separate agreement with JCB, in which JCB would sell the tractor to the Bank and the Bank would finance it to Mathis.[2] Their recourse agreement contained nearly identical language, which required JCB to pay a recourse payment up to $33,851.02 at the end of the lease term if the tractor sold for less $252,190.11.

At the end of the Mathis lease, the tractor was returned to Windridge and eventually sold for $137,500.00 to a Windridge employee in a private sale. Windridge facilitated the sale and remitted the proceeds for the tractor to JCB.

---

[1] The disputed contract was entered into by Bank of the West. During the proceedings, Bank of the West merged with BMO Harris Bank. We refer to them generally as "the Bank" to avoid confusion.

[2] While the record provides the general context of the relationship between the Bank and JCB, the district court entered a protective order for their joint venture agreement on February 23, 2023.

Pursuant to the recourse agreements, since the tractor was sold for nearly $115,000 less than $252,190.11, the Bank invoiced Windridge for $16,925.51 and JCB for $33,851.02, the maximum recourse amounts due pursuant to their respective agreements.[3] JCB paid its invoice. Windridge did not.

The Bank filed suit against Windridge for the unpaid recourse payment. In response, Windridge argued that the Bank was barred from obtaining judgment and the obligation was already paid by JCB. Both parties filed competing motions for summary judgment, which the court denied. After trial, the court ruled in favor of the Bank and ordered Windridge to pay the $16,925.51 recourse payment. Windridge appeals.

## II. Review.

"A breach-of-contract claim tried at law to the district court is reviewed by us for correction of errors at law." *Dolly Invs., LLC v. MMG Sioux City, LLC*, 984 N.W.2d 168, 173 (Iowa 2023) (citation omitted). "The district court's findings of fact are binding on us if they are supported by substantial evidence." *Id.* (cleaned up).

## III. Discussion.

Windridge claims the court erred in its two primary rulings: that the Bank was entitled to bring a suit against Windridge and its enforcement of the recourse payment. We address each argument in turn.

---

[3] We do note that the invoice contained an error, listing the purchase price of the tractor as $125,000.00 rather than $137,500.00. But this error would not change Windridge's recourse payment amount, which is capped at $16,925.51.

*A. Alleged Inability to Pursue Lawsuit.*

First, Windridge contends that the Bank was barred from pursuing a lawsuit on several grounds: failure to register its fictitious name, lack of subject matter jurisdiction and authority by the district court, the Bank was not the real party in interest and lacked standing to sue, and Windridge's role as a third-party beneficiary.

*1. Consequences of Failure to Register.*

Windridge argues that the lawsuit is barred by the Bank's alleged failure to register under Iowa law. Under Iowa Code section 490.401(5) (2022), business entities are required to register trade names, including fictitious names, with the Iowa Secretary of State. The statute provides no prescribed consequence for a corporation's failure to register, but Windridge contends that this alleged failure bars the Bank from enforcing any action against it for the unpaid recourse payment. Windridge provides no Iowa authority for this assertion, and while it cites authorities from other jurisdictions, they conflict with Iowa caselaw regarding similar statutes. *See Transgrud v. Leer*, No. 19-0692, 2020 WL 5650734, at *5 (Iowa Ct. App. Sept. 23, 2020) (finding the "use of an unrecorded trade name . . . does not invalidate the [contract]"); *Ambro Advert. Agency v. Speed-Way Mfg. Co.* 233 N.W. 499, 501 (Iowa 1930) (affirming the court's enforcement of a contractual obligation despite the business's failure to properly register its trade name). The Bank was therefore entitled to judicial enforcement of a valid contractual obligation.

While Windridge claims the court's reliance on *Ambro* is "erroneous" because the Bank's failure was knowing and registration was "a condition of the contract," he provides no evidence to support these contentions. First, while we

are not convinced there is evidence that the Bank "knowingly" avoided the registration requirement, Iowa courts generally enforce these contracts, anyway. *See Pro Edge, L.P. v. Gue*, 374 F. Supp. 2d 711, 744 n.14 (N.D. Iowa 2005) (collecting cases where corporations were generally permitted to do business and enforce contracts under fictitious names). Second, nothing in the record indicates that registration was a condition precedent to enforcement; in fact, neither the parties nor the contract reference the registration requirement at all. *See Vista Invs., L.C. v. Iowa Off. Supply, Inc.*, No. 15-0355, 2016 WL 1680646, at *3 (Iowa Ct. App. Apr. 27, 2016) (considering "the intention of the parties gathered from the language of the entire instrument"). Instead, substantial evidence supports the district court's ruling that the consequences for failure to register, if any, do not include barring the suit.[4]

2. *Party in Interest Determination.*

Windridge then argues that the lawsuit is barred because the Bank is not the real party in interest.[5] *See* Iowa R. Civ. P. 1.201 ("Every action must be prosecuted in the name of the real party in interest."). Specifically, Windridge contends that it had no contractual relationship with the Bank based on its failure

---

[4] Windridge similarly contends that the court lacked subject-matter jurisdiction and authority to hear the case for the same reason. Because we resolve the registration issue, we do not address these other claims.

[5] Windridge also argues that the Bank lacked standing for the same stated reasons. *See Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 434–35 (Iowa 2008) (differentiating between a real-party-in-interest determination and standing). Because we find that the Bank was the real party in interest and "suffered a demonstrable injury" because of Windridge, we find substantial evidence supports the court's ruling that the Bank had standing. *See id.* at 435. We therefore do not address this argument further.

to register and because JCB was listed as the party in the agreement.[6] But this is incorrect. Again, Windridge fails to provide a single Iowa authority that supports his claim that the consequence for failure to register is the court being unable to enforce the contract. But more importantly, the record before us shows that Windridge contracted with the Bank. The contract itself, which Windridge signed, listed the lessor as "JCB Finance, a program of Bank of the West" and included the Bank's address. Windridge also communicated with the Bank after the expiration of the lease regarding the agreement. Therefore, Windridge's argument lacks merit.

### 3. Third Party Beneficiary.

Next, Windridge contends that the Bank cannot recover because Windridge is a third-party beneficiary to the agreement between the Bank and JCB, arguing that JCB's payment to the Bank was on its behalf. But we do not find this issue has been preserved for our review. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Windridge did not bring this claim before the district court, and the court did not issue a ruling on it. It is therefore not preserved for us on appeal. *See id.* We therefore do not reach its merits.

---

[6] Although Windridge does not make this argument, we do note that the Bank's merger during the pendency of proceedings does not prevent it from bringing this suit. *See Pillsbury Co.*, 752 N.W.2d at 435 (noting that an effective assignment "transfers the 'entire rights under a contract from the assignor to the assignee,'" including the right to enforce contractual remedies (citation omitted)).

*B. Alleged Overpayment of Contractual Obligation.*

Finally, Windridge contends that the court erred by finding that the recourse payment had not been paid. Windridge argues that JCB's payment of its obligation somehow absolves Windridge of satisfying its own invoice because it was not aware of the agreement between the Bank and JCB. But Windridge's lack of knowledge of a separate agreement, to which it was not a party, is irrelevant to whether it satisfied its own contractual obligations. Substantial evidence supports the district court's finding that Windridge's recourse payment had not been made. At trial, the Bank provided evidence of the contract, including its creation, the terms, and its attempts to collect payment. Windridge only presented evidence showing that JCB paid its own recourse payment while simultaneously providing no evidence that JCB in so doing somehow intended to pay Windridge's obligations.

And while Windridge further argues that their right of first refusal was not honored (and therefore payment was not due yet), this is also not supported by the record. Based on the facts, Windridge facilitated the sale of the tractor to a Windridge employee and remitted the check to JCB. The district court reasoned that Windridge's active participation in this transaction conflicted with Windridge's argument that the tractor was somehow sold out from under it to another party. This was further corroborated by Windridge's own testimony, in which Windridge's owner testified that he was not interested in purchasing the equipment. Because substantial evidence supports the court's finding, we must affirm.

***IV.***     ***Disposition.***

Because the court did not err by enforcing the contractual obligation, we affirm.

**AFFIRMED.**